# Estate of Stephen Smith, deceased.   Appeal of M. H. Stevenson.

*Orphans' court sale—Description of land.*

An orphans' court sale of a farm by an executor will not be set aside on the ground that a lot which was alleged to be not a part of the farm had been included in the sale, where the evidence shows that, although the older surveys of the farm had not included the lot in question yet testator had acquired title to the land by adverse possession, and had for a number of years made it a part of one of his fields, and at the time of his death recognized it as a part of his farm and not as an independent tract of land.

*Orphans' court sale—Application for order of sale for payment of debts—Notice to widow and heirs.*

The widow and heirs of a decedent and persons claiming under them are not entitled to specific notice of an application for an order of sale for the payment of debts.

*Orphans' court sale—Jurisdiction—Private sale—Act of May 9, 1889—Decedents' estates.*

Under the Act of May 9, 1889, P. L. 182, the orphans' court has jurisdiction to decree and confirm a private sale of real estate for the payment of debts.   The court is to consider all the circumstances, and if for any sufficient cause it believes a better price can be obtained, or is offered at private than at public sale, it may decree or approve such sale.

Where land has been put up at public sale, and only $20.00 an acre bid, and it appears that the order of sale had been renewed from term to term for over two years, and that the executor in his return under oath had said he could not find a purchaser for the land on account of the greatly depressed condition of the real estate market, the court commits no error in confirming a private sale of the land at $45.00 an acre, upon the sworn return of the executor that it was unlikely that a better or as good an offer for the land could be had for some time to come.

The orphans' court may grant an order to sell the real estate of a decedent to pay debts "at either public sale or private sale."

*Orphans' court sale—Confirmation of sale—Setting aside sale—Laches.*

Although there may be irregularities in a private sale of real estate by an executor for the payment of debts, the orphans' court will not set the sale aside upon a petition filed sixteen months after the confirmation of the sale, where it appears that the purchaser had been placed in possession of the land, and had practically paid all the purchase money, and there is no offer to refund the money, and no averment in the petition that the land was sold at an inadequate price.

Argued Oct. 17, 1898.   Appeal, No. 19, Oct. T., 1898, by M. H. Stevenson, from decree of O. C. Washington Co., Feb. T.,

1898, No. 1, refusing to set aside an executor's sale.   Before
GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.
Affirmed.

Petition of M. H. Stevenson, vendee of Stephen Smith's de-
visees, praying the court to set aside a private sale of a lot known
as the "Coulter lot," made and confirmed, without notice to
petitioner, by Geo. M. Tenan, executor, to Robert Scott, for
payment of debts.   The case was heard on petition, answers
and testimony taken before a commissioner.   It was called the
"Coulter lot" case, to distinguish it from an action of eject-
ment brought about the same time by Stevenson v. Scott, to
recover a tract known as the "Macurdy farm," which had also
been sold by the executor to Scott privately with the "Coul-
ter lot."

McILVAINE, P. J., filed the following opinion:

On December 7, 1894, this court confirmed nisi twenty days
a return made by Geo. M. Tenan, executor of the will of Ste-
phen Smith, deceased, that he had sold, on an order of court
previously granted, a farm of the decedent known as the "Ma-
curdy farm" to Robert Scott, at private sale, for the sum of
$45.00 per acre, subject to survey.   Under our court rule the
confirmation became absolute without further order at the end
of the twenty days, no exceptions having been taken and filed
to the decree.   On April 14, 1896, more than sixteen months
after this confirmation, M. H. Stephenson, the vendee of the
children and devisees under the will of Stephen Smith, pre-
sented his petition for a citation to show cause why this sale
should not be set aside, for the following reasons :  (1) because
the executor, without describing it in his petition to obtain an
order to sell, had sold with the "Macurdy farm" a lot of ground
that was known as the Coulter lot, which was no part of the
farm ; and (2) because the orphans' court had no jurisdiction to
confirm the private sale made by the executor.

Geo. M. Tenan, the executor, and Robert Scott, the pur-
chaser, filed answers to this citation, and a commissioner was
appointed to take testimony.   A careful consideration of this
testimony shows, and we find, that a small lot of ground con-
taining less than one acre, first known years ago as "the Coutler

lot," was included in the survey of the Macurdy farm made by
the executor in pursuance of his return of sale which was con-
firmed by the court, and that Robert Scott claims it as part of
his purchase.   We also find that this lot was not included in
the old surveys of the Macurdy farm, but that for a long num-
ber of years it had been in the possession of Stephen Smith,.
deceased, and his predecessor in the title to the Macurdy farm,.
and that at the time of his death he had title by adverse pos-
session.   [We also find that for a long number of years this.
small piece of ground was inclosed with the Macurdy farm and
was part of one of its fields, and that Mr. Smith himself thus.
recognized it as part of his farm and not as an independent
tract of land.   We, therefore, hold that the executor did not
err in including this piece of ground in the sale of the Macurdy
farm which he sold by the acre, and that there was no necessity
for describing it as a separate tract of land.   It was part of the
Macurdy farm.] [1]

It is true, as clearly appears from the testimony, that this
small piece of land was once occupied by a man by the name of
Coulter, and that the fence on one side of it was on one of the
lines called for by the old Macurdy survey, and that it then
was not part of the Macurdy farm.   But the house in which
Coulter lived was removed, and the fence between the lot and
the Macurdy farm was taken down, and for a long number of
years the lot has been part of an enclosure which constitutes,
one of the fields of the Macurdy farm.   The house, or board
shanty, now on this piece of ground, was erected by a tenant,
of Stephen Smith, deceased, after he had obtained title by ad-
verse possession.   This title was perfected, not because Stephen
Smith and his predecessors occupied the lot as an independent
piece of land, but because they inclosed it with and made it a
part of the Macurdy farm.   This disposes, adversely to the
petitioner, of the first reason assigned why this sale should be
set aside or the return of the executor amended so as to ex-
clude this lot.

Now, as to the second reason : Stephen Smith died on Octo-
ber 7, 1892, testate.   He bequeathed a number of legacies to
his children and devised " all the rest, residue and remainder
of his estate" to be divided share and share alike between his
children, Wm. Smith, John A. Smith, Sallie Smith and Mary

A. Smith. The petitioner, by purchase, became the sole owner of all the interests of the children of the testator, both as his heirs at law and as beneficiaries under his will. Stephen Smith died seized of two tracts of land, the "Macurdy farm," containing about seventy-three acres, and another farm containing about 153 acres. On February 13, 1893, about four months after Mr. Smith's death, the executor presented a petition to this court setting out, as required by the act of 1832, the insufficiency of the decedent's estate to pay his debts, the amount of the personal estate as shown by the appraisement filed in the register's office, the debts of the decedent, and that he died seized of the two tracts of land hereinbefore referred to, and prayed for an order to sell the real estate to pay the debts of the decedent. His petition concludes in this way: "and he further suggests that he be authorized to make either or both of said sales at public or private sale as the interests of the decedent's estate may appear to dictate." On February 13, 1893, the court made the following order: "And now, February 13, 1893, the petition of Geo. M. Tenan, executor of the will of Stephen Smith, deceased, presented in open court: Whereupon, upon due consideration thereof, it is ordered that the real estate described in the petition be sold in the order in which said real estate is described therein, if such sales be necessary for raising the fund mentioned in the petition, such sale or sales to be made at either public sale or private sale as the interest of the decedent's estate may appear to require, and to be made upon the usual terms of payment of purchase money. Order returnable to May term, 1893. Bond in the sum of $      to be filed." This order was renewed at the May term, 1893, at the August term, 1893, and at the November term, 1893. At the February term, 1894, the executor returned that he had sold at public sale both the 153 acre farm and the seventy-three acre, or Macurdy farm, to Matthew H. Stevenson, Esq., (the petitioner in this proceeding); that the first named farm was bid off by Stevenson for one dollar, subject to a mortgage of $3,400, and a judgment of about $800, and the second, or Macurdy farm, was bid off at $1,800 (about $25.00 per acre). The executor asked that these sales be not confirmed to Mr. Stevenson, as he had learned that persons present had refrained from bidding, believing that Stevenson was bidding in the land for the heirs. A citation was granted

on Matthew H. Stevenson, the purchaser, and after hearing, these sales, on May 9, 1894, were set aside and an alias order granted returnable to August term, 1894. At August term the executor returned: "The return of Geo. M. Tenan, executor of the will of Stephen Smith, deceased, to the within order of sale respectfully represents: that in consequence of the depressed condition of business he has not been able to effect a sale of the real estate described in his order. He further represents that he has some expectation of being able to obtain a purchaser for said real estate before November term, 1894, of this court, which expectation will be helped if he be authorized to negotiate a private sale of the farms. He therefore prays the court to renew his order of sale in this case to November term, 1894, with authority to him to sell at either public or private sale." The court then made this order: "And now, August 23, 1894, the within return presented in open court and approved: And the prayer of the executor as to the renewal of his order is granted upon the manner of making the sale prayed for." At the next term of court the executor made the following return: "The return of Geo. M. Tenan, executor of the will of Stephen Smith, deceased, to the order of the court (hereto attached) for the sale of the decedent's real estate respectfully represents: (1) That he has not been able to effect a sale of the farm first described in his order; which, in his opinion, is attributable to the continued depression in business affairs; (2) that he has sold at private sale the farm of seventy-three acres, more or less (described second in said order) to Robert Scott, at and for forty-five (45) dollars per acre cash, subject to survey. Mr. Scott's is the only offer he (said executor) has had for the farm; and he respectfully recommends that he be authorized to accept it because (1) Mr. Scott is able to comply with his offer; and (2) if the court refuses to confirm the sale to Scott it is unlikely that a better or as good an offer for said farm can be had for some time to come. He therefore prays the court to confirm the sale here reported, and to renew his order of sale as to the 153 acre farm, upon the terms contained in the last renewed order of sale." The court thereupon made this order: "And now, December 7, 1894, the within return of sale presented in open court and the sale reported is confirmed nisi

twenty days; the order of sale as to farm reported as unsold is renewed on the same terms and conditions as the last renewed order of sale."

At the next term of court the order of sale as to the 153 acre tract was renewed to May term, 1895. At the May term of court the executor made return that he was unable to sell "consequent upon the greatly depressed condition of the real estate market," and his order of sale was renewed, returnable to the August term, 1895. On August 19, 1895, the executor returned that he had sold the 153 acre tract of land to M. H. Stevenson at public sale at and for the price of $35.00 per acre, subject to survey, one third of the purchase money to be paid on confirmation of sale by the court, the balance of the purchase money to be paid in two equal annual instalments thereafter, with interest on each instalment from confirmation of sale. The court thereupon made this order: "And now, August 19, 1895, the within return of sale presented in open court and the action of the executor of Stephen Smith's will in making sale of real estate reported is approved;" and later the following decree was made: "And now, September 17, 1895, the within reported sale is now confirmed. And now, September 17, 1895, bond in sum of $6,750, with J. B. Tenan and R. S. McCollough as sureties, approved and filed. (Macurdy farm.) And now, September 17, 1895, bond in sum of $10,800, with J. B. Tenan and R. S. McCollough as sureties, approved and filed."

This closed up the sale of all the real estate of which the decedent died seized, and which was ordered sold in the original decree of February 13, 1893. The next entry in this orphans' court record is of date January 6, 1896, when the executor presented his petition setting forth that M. H. Stevenson, the purchaser of the 153 acre tract of land, had failed to pay the one third of the purchase money due on confirmation and asking that the confirmation be lifted and the land resold. The court granted a citation, which was answered by the purchaser, who alleged that he had paid debts of the estate to an amount greater than the first payment, and that the executor had agreed to allow the amount of these debts as a credit on the purchase money. This court, on August 5, 1896, disposed of this citation by a decree which was appealed from to the Supreme Court. This appeal was decided by the Supreme Court on January 5,

1897. See 179 Pa. 208. One of the prayers of the answer of M. H. Stevenson in this proceeding was that the executor be required to satisfy, or cause to be satisfied, the mortgage of $3,400 against the 153 acre tract which he bought, $1,700 of which, with interest thereon, belonged to Robert Scott, and which Stevenson alleged had been paid. On April 4, 1896, this proceeding, as we have already said, was instituted by M. H. Stevenson for the purpose of having the sale to Robert Scott of the Macurdy, or seventy-three acre farm, set aside for the two reasons we have before stated.

This statement of the different steps taken in the proceeding to sell the testator's real estate will enable us better to consider the second reason, to wit: that the court had no jurisdiction to confirm the sale as returned by the executor. In support of this position the petitioner alleges, (1) that he had no notice of the sale and its confirmation; (2) that it is not alleged in the petition or return of sale that a better price "could be or actually was obtained at such private sale than could be obtained at a public sale;" (3) no "sufficient cause" is shown either in said petition or in said return for the making of a private sale; (4) no facts are averred or proved to enable the court to form an opinion whether or not "under all the circumstances a better price can be obtained at private than at public sale;" and (5) there is no authority in law for an order of sale authorizing an executor to sell land for the payment of debts "at either a public or a private sale;" said order should have directed either a public sale or a private sale; it should not have been in the alternative.

As to the first position, that M. H. Stevenson, as vendee of the heirs at law and devisees under the will of Stephen Smith, deceased, should have had notice of the orphans' court proceeding to sell the real estate of the decedent to pay his debts, it is but necessary to quote from the opinion of Mr. Justice WOOD-WARD in West Hickory Mining Association v. Reed, 80 Pa. 47. He says: "It has long been thoroughly settled that the widow and heirs of a decedent are not entitled to specific notice of an application for an order of sale for the payment of debts: Murphy's Appeal, 8 W. & S. 169; Weaver's Appeal, 19 Pa. 416; Wall's Appeal, 31 Pa. 62; Stiver's Appeal, 56 Pa. 9."

Now, as to the second, third and fourth reasons why the

decree and approval of the private sale of this Macurdy farm should not have been made. They can be considered together. There can be no doubt of the power of the court to decree and approve a private sale of real estate for the payment of debts since the act of May 9, 1889; the only question, therefore, that can be raised here is on the sufficiency of the record to show that the court was warranted in exercising that power. The court is to consider all the circumstances, and, if for any sufficient cause it believes a better price can be obtained, or is offered, at private than at public sale, it can decree or approve such sale. The court in this case had before it the whole record of this case when it made the decree of confirmation August 19, 1895. It knew that the original order of sale had been granted on February 13, 1893, and that the Macurdy farm had once been sold at public sale for the sum of about $25.00 per acre, which sale was set aside; it knew that the order of sale had been renewed from term to term for over two years, and that the executor, under oath, had said he could not find a purchaser for said land on account of the greatly depressed condition of the real estate market, and it had before it the oath of the executor when he made the return of sale "that it is unlikely that a better or as good an offer for said farm can be had for some time to come." These facts were, in our opinion, when the sale was confirmed, sufficient (and we still think them sufficient) to justify the belief that the price offered by Robert Scott, $45.00 per acre ($20.00 per acre more than had been bid at a public sale), was a better price than could have been obtained at a public sale, and we confirmed the sale nisi twenty days.

As to the fifth reason we are of opinion that there can be no valid objection to the court granting an order to sell the real estate of a decedent to pay debts "at either public sale or private sale." At least it has been the practice of this court to do so. It gives the executor or administrator authority to try both ways, if necessary, before the return day, and this enables him to sell in the way that is most advantageous to the estate. Frequently a trustee, after testing bidders at a public sale and adjourning it for want of an adequate bid, is offered at private sale a price in advance of what was bid at the public outcry, which he is willing to accept, and why not give him authority

to accept such a bid at the same time he is given authority to sell at public sale? That is, grant an order to sell the real estate and allow him to execute the order either by a public sale or by a private sale if he can get a better price at private sale than he was offered at public sale.

The act of 1832 prescribes the manner in which an order for the sale of the land of a decedent may be had for the payment of his debts. The sale must be made under the direction of the orphans' court and the necessary jurisdictional facts that must exist and must be alleged in an executor's or administrator's petition are stated in section 33,—the appraised value of the decedent's personal property, a statement of his debts and the real estate of which he died seized, showing that the personal estate is insufficient to pay debts and what real estate may be sold. The manner of sale or of executing the order to sell has nothing to do with the jurisdiction of the court to order a conversion of the decedent's real estate. It may have something to do with the regularity or validity (not of the order to sell) but of the sale. The rule prescribed for sales is public unless under the circumstances sufficient cause is shown for making a private sale and that a better price can be or has been obtained than could be obtained at public sale. And a private sale can be justified at any time, on the return of the sale or even on a citation to set aside the sale, by showing the necessary facts without in any way affecting the jurisdiction of the court to order the sale of the real estate.

This brings us to the consideration of another phase of this proceeding. The relative rights of the petitioner and of the purchaser, Robert Scott, one of the respondents, must be adjusted on the principles of equity. Although the petitioner may have had no notice of this sale when made and returned, and was not then permitted to except to its confirmation, he is now in court asking that the sale be set aside, and it is supposed that all the objections to the confirmation of the sale are fully stated in his petition; and it is significant that it is nowhere alleged that the price paid by Mr. Scott is inadequate or that it is not a better price than could have been obtained at public sale; indeed, if the testimony of the executor is to be believed, the petitioner at one time told him that he had made "a good sale." Again, it appears that the purchaser, Robert

Scott, has paid all the purchase money except $35.00, and is in possession of the land sold, and further that he paid the purchase money in such a way as to discharge debts of the estate to the relief of the petitioner who is vendee of the heirs at law and legatees under the will of Stephen Smith, deceased. If the mortgage on the 153 acres of land bought by the petitioner, one half of which belongs to Robert Scott, is to be satisfied (and the petitioner is insisting on this) and this sale is to be set aside, then Scott loses both the land he purchased and his interest in the mortgage which was credited as a payment on the purchase money. Even granting, then, that the record to No. 1, February term, 1893, in the estate of Stephen Smith, deceased, is full of irregularities, and that the decree of December 7, 1894, confirming the private sale of the Macurdy farm to Robert Scott was not made in conformity to law, the petitioner, in our opinion, is not entitled to the relief prayed for in view of. the facts: (1) that the sale was confirmed nisi twenty days on December 7, 1894, and no move was made to have it set aside until April 14, 1896, after the purchase money was all paid except $35.00, and the purchaser put in possession; (2) that no allegation is made that the land was sold at an inadequate price, nor that the price is not better than could have been obtained at public sale; and (3) that no expression of willingness on the part of the petitioner to have the executor refund to the purchaser the consideration paid for the land is made, but on the contrary a demand on the executor to have the mortgage on the farm bought by him and turned over to the executor by Robert Scott as part of the purchase money, satisfied.

The friction between the petitioner and the executor, Geo. M. Tenan, one of the respondents, may all arise primarily out of the manner in which the executor has attempted to discharge the duties of his trust, and many of the complaints made by the petitioner, in this proceeding, and the others that have been before this court, in this same estate, may be well founded; yet to unconditionally set this sale aside would not only be inequitable to the purchaser, but it would probably delay the settlement of the estate to no purpose, as we have no assurance or even allegation that the land has not been sold for all it would bring if a public sale was ordered.

As the Supreme Court, in the proceeding to enforce the

payment of the purchase money of the 153 acre tract, has held the question of liability for costs in that proceeding in abeyance until the executor has settled his account, we will make the same order here. If the executor's delay in settling the estate was wholly his fault and his management of it has made necessary these proceedings in order to close it up one way or the other, then he should pay the costs; but that is a question we leave open to be determined with the question of costs in the other proceeding to which we have referred.

[And now, January 28, 1897, this citation came on to be heard and was argued by counsel, whereupon, upon due consideration, it is ordered, adjudged and decreed that the return of sale made by Geo. M. Tenan, executor of Stephen Smith, deceased, and confirmed nisi twenty days on December 7, 1894, be not modified nor set aside as prayed for; and it appearing now to the court, after hearing and upon due consideration, that under all the circumstances there were sufficient causes to justify a private sale, and that the said Geo. M. Tenan, executor, sold to Robert Scott the tract of land known as the Macurdy farm, containing seventy-three acres more or less, at a better price, to wit: $45.00 per acre, subject to survey, than could have been obtained at public sale, it is further ordered, adjudged and decreed that said sale be and it is hereby absolutely confirmed, and the executor is directed to execute and deliver to the said Robert Scott a good and sufficient deed for the same upon full payment of the purchase money; and it is further ordered that Geo. M. Tenan pay the costs of this proceeding without prejudice to his right to take credit for the same in the settlement of his account.] [2]

On July 3, 1897, the following supplementary decree was entered:

[The decree filed in this matter on January 28, 1897, being based on the proof that the purchase money of the farm sold by Geo. M. Tenan, executor, to Robert Scott had all been paid but $35.00, and that part of said purchase money was paid by Robert Scott receipting to the executor for the amount of his one-half interest in a mortgage (held by him by assignment) on the 155 acres sold by the executor to the petitioner, M. H. Stevenson, therefore, to protect the petitioner, as a supplement to the decree of January 28, 1897, it is now, February 3, 1897,

ordered, adjudged and decreed that the said Robert Scott, on the receipt of the deed mentioned in said decree of January 28, 1897, enter or cause to be entered on the record of said mortgage in the recorder's office, a satisfaction of his interest therein.] [3]

*Errors assigned* were (1) portion of the opinion, quoting it; (2, 3) the decree and the supplementary decree of the court.

*M. H. Stevenson*, with him *J. C. Ewing*, for appellant.—Our contention is that "the Coulter lot" is not included in the land described in the petition, and that the executor therefore exceeded his authority by including the lot in his final survey: Devlin on Deeds, sec. 1044; Chichester v. Oxenden, 3 Taunton, 147; Starkie on Evidence, secs. 692, 693; Harvey v. Vandegrift, 89 Pa. 352.

The orphans' court had no jurisdiction, on the record before it, to order or approve a private sale under the Act of May 9, 1889, P. L. 182: Act of March 29, 1832, sec. 57, P. L. 190; Torrance v. Torrance, 53 Pa. 505; Johnson's App., 114 Pa. 142; Bennett v. Hayden, 145 Pa. 594; Heffner's App., 119 Pa. 462; Westhafer v. Koons, 144 Pa. 33; Halderman's App., 104 Pa. 251.

That an averment of "better price" is absolutely essential to give jurisdiction is shown by the cases decided under the Act of April 18, 1853 (Price Act), P. L. 503, from which the act of 1889 is copied: Gilmore v. Rodgers, 41 Pa. 122; Brown's App., 68 Pa. 54; Yard's Est., 15 W. N. C. 422; Moorhead v. Wolff, 123 Pa. 368; Morrison v. Nellis, 115 Pa. 45.

Notice should have been given: Rutherford's Case, 72 Pa. 84; Dale v. Medcalf, 9 Pa. 110; Thompson v. Stitt, 56 Pa. 160; Sager v. Mead, 164 Pa. 125; Ragan's Est., 7 Watts, 441.

*A. M. Todd* and *H. M. Dougan*, with them *James A Wiley*, for appellee.

PER CURIAM, October 31, 1898:

The very able and exhaustive argument of the learned counsel for the appellant has not convinced us that there was any error in the decree, or in the opinion of the court below. As

it seems to us the decree is fully vindicated by the findings and conclusions contained in the opinion and on it we affirm the decree.

Decree affirmed and appeal dismissed at the cost of the appellant.