# O'Brian v. Wiggins.

*Decedent's real estate—Sale by order of court—Discharge of liens.*

A public sale under the Act of March 29, 1832, P. L. 190, discharges the lien of judgments, and when the court decrees by virtue of the supplementary Act of May 9, 1889, P. L. 182, the sale shall be private, the effect upon liens would seem to be the same, provided that the authority to decree the sale and the manner of its execution is in other respects in accordance with the provisions of the former act.

*Jurisdiction, O. C.—Essentials—Sale of real estate.*

The facts set out in the petition determine jurisdiction, and when the petition for leave to sell real estate for payment of debts fails to disclose the jurisdictional facts designated in sections 31 and 33 of the act of 1832, that is, to show that the personal estate is insufficient to disclose an appraisement of personal estate together with a full and correct statement of all decedent's real estate and true account of all debts which have come to the knowledge of the executor or administrator, such petition fails to establish jurisdiction.

*Decedent's estate—Private sale of real estate—Act of 1889—Notice.*

As the Act of May 9, 1889, P. L. 182 is silent upon the subject of notice it would seem that before a private sale under that act is confirmed, notice should be given which would be equivalent to the notice required under the preëxisting legislation which it is necessary to invoke in order to sustain the jurisdiction of the court to decree the sale.

Argued Nov. 16, 1899. Appeal, No. 191, Oct. T., 1899, by plaintiffs, in a suit of Thomas O'Brian, Sarah O'Brian and Martha Harman, administrators of John O'Brian, deceased, against Clayton Wiggins, from judgment of C. P. Lancaster Co., Aug. T., 1898, No. 6, on verdict for defendant. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by W. D. PORTER, J.

Assumpsit. Before LIVINGSTON, P. J.

It appears from the record that this suit was brought to recover the purchase money from defendant, namely $1,200, with interest, under an agreement of private sale of decedent's real estate subsequently approved and confirmed by the orphan's court.

The following offer of evidence on the part of the plaintiffs was overruled by the trial judge:

We offer in evidence the petition of the administrators and the order of the court obtained thereon, and return thereto, for the sale of this property for payment of debts. The order was obtained on August 19, 1897.

Objected to by defendant.

The Court:

That order was ended without any effect and we will disallow the offer and give you an exception. Plaintiff excepts. [10]

The court admitted over objection of plaintiffs the following question and answer in direct examination of David McMullen, a witness called by defendant:

"Q. And had Mr. Wiggins or not drawn his judgment bond in favor of George H. Smith for a certain sum of money?" Objected to by plaintiff. Admitted. Plaintiff excepts. "A. I am unable to say whether he had his judgment bond drawn, but it was arranged he was to give Mr. Wiggins the money at any rate, and was to accept a judgment bond from him for the amount due him from the O'Brien estate."] [11]

At the trial plaintiffs submitted the following points:

[1. Under the evidence submitted the verdict of the jury should be in favor of the plaintiffs for the full amount of their claim, to wit: $1,200, with interest from the time the deed was tendered to defendant. *Answer:* This point we refuse.] [2]

[2. The sale having been made under the Act of May 9, 1889, P. L. 182, by order of the orphans' court, it was a judicial sale and divested all liens of judgments against the property. *Answer:* This we answer it could not do under the agreement made privately by one administrator.] [3]

[3. The property having been purchased by Clayton Wiggins, and he having no liens against it, he could only pay to the administrators the entire purchase money; the plaintiffs at the time of the order of court confirming the sale, having given and filed with the court their bond with approved security for the faithful application of the proceeds of sale. *Answer:* This is refused under the agreement made with the defendant before any approval of the court, without which no deed could be made.] [4]

[4. There was no tender made in this case by defendant, such as is recognized by the law. *Answer:* Our answer to that

is, there was no objection made except as to the amount tendered at the time of the tender.] [5]

Defendant submitted the following points:

[1. The judgments against John O'Brian in favor of George H. Smith, as testified to, being liens of record, at the time the deed was tendered, against the property purchased by Clayton Wiggins from the plaintiffs, it was " clear of all incumbrances," and the defendant was not obliged to accept the same under his agreement of purchase, and the verdict of the jury must be in favor of the defendant.

These being the only judgments and an arrangement having been made by Wiggins to have them released and make this property clear of all incumbrances, as stated in agreement, and pay balance cash, and the party being present to release the judgments being all the incumbrances. *Answer:* In this case we say the defendant would not have been obliged to accept his deed, the deed tendered to him on that day without the release of the premises from the liens that were against it at the time it was sold privately to him; and that being offered to be done at that time, the verdict should be in favor of the defendant.] [6]

[2. If the jury believe that there were judgments in favor of George H. Smith, as has been testified to, and as the records show, and against John O'Brian, which judgments were liens against the real estate in question, and that, when the defendant and his counsel met the plaintiffs with their counsel, tender was made by the defendant to the plaintiffs of the difference between George H. Smith's liens and the purchase money, $1,200, there can be no recovery for the plaintiffs in this case, and the verdict of the jury must be in favor of the defendant. *Answer:* That is affirmed under the agreement made between Thomas O'Brian and Wiggins.] [7]

The court charged the jury in part as follows:

[Now it will not do to say there might have been some other claim against this property—there was no other lien, and none but a lien creditor could prevent a sale of that kind; no other debt, no matter what it might have been, there being no mortgages, would have been a lien on this property; and it was necessary to remove this lien before Mr. Wiggins would

be able to accept the deed, because of the irregularity in the first place, and the agreement being made by one of the parties, and the fact that no sale could be made until permission was given by the orphans' court. That would require, before he was obliged to accept or pay the purchase money, that these liens should be removed.] [8] . . . .

[After that, some time, it was sold by Thomas O'Brian, one of the administrators of John O'Brian, to Clayton Wiggins, at and for the sum of $1,200, upon these terms and articles of agreement, indented, made and agreed upon March 19, 1898, between Thomas O'Brian, administrator of John O'Brian, deceased, of Providence township, of the one part, and Clayton Wiggins, of the same place, of the other part, as follows, to wit: (Court reads to the jury the article of agreement, marked " J. B. L.") This was a private sale made by one of the administrators, which he had no authority to do, and could not make so as to convey this title free and clear of all incumbrances on the first of April. The other heirs, however, have joined in that sale by signing the petition, and agreeing it should be sold, and applying to the court for the conveyance of this property.] [9]

The court directed a verdict for defendant. Plaintiffs appealed.

*Errors assigned* were (1) in giving binding instructions to defendant. (2–5) Answers to plaintiffs' points, reciting same. (6, 7) Answers to defendant's points, reciting same. (8, 9) To portions of the judge's charge, reciting same. (10, 11) To rulings on evidence, reciting same.

*B. F. Davis*, for appellants.—This suit is based upon a decree of the orphans' court made in pursuance of the Act of May 9, 1889, P. L. 182.

A sale under the order of court for payment of debts is a judicial sale, and discharges the premises from the lien of debts of decedent: Randolph's Appeal, 5 Pa. 242.

Many other authorities might be cited to the same point.

This suit being in the common pleas, upon the decree of the orphans' court, said decree cannot be attacked collaterally, and there can be no defense but payment: Kramer v. Mugele, 153 Pa. 493.

The decree gave defendant title and the orphans' court had jurisdiction under the Act of May 9, 1889, P. L. 182: Stevenson v. Scott, 188 Pa. 234.

*J. W. Johnson* and *John M. Groff*, for appellee.

OPINION BY W. D. PORTER, J., May 24, 1900:

By articles of agreement entered into on the 19th of March, 1898, the administrators of John O'Brian, deceased, did "covenant, promise, grant and agree to convey to Clayton Wiggins, his heirs and assigns, in fee simple, clear of all incumbrances, a certain tract of land belonging to the estate of the decedent." Wiggins, upon his part, covenanted and agreed to pay to said administrators the sum of $1,200, "for the true performance of all and every the covenants and agreements aforesaid." On the 9th day of April, 1898, the administrators presented to the orphans' court their petition, setting forth the execution of said agreement and attaching a copy thereof. The petition recited that John O'Brian had, on March 21, 1897, died seized of said tract of land; "that the said administrators obtained an order from said court to sell said land for payment of debts of said decedent from said court, on petition filed September 13, 1897, and exposed said premises at public sale in October, 1897, on the premises, and the same were unsold for want of bidders, a return of which proceeding was made to this honorable court. That the condition of said property and the affairs of said estate require that it be settled promptly." They prayed the court "to make an order and decree approving said private sale, the interest or title in said real estate being undivided, and that a better price can be obtained at private sale than at public sale, according to the acts of assembly in such case made and provided." The court made a decree, approving, ratifying and confirming the sale as in the petition set forth to have been made, "and decreed the said premises and real estate to him, the said Clayton Wiggins, his heirs and assigns, in fee, subject and liable to the payment of the purchase money, agreeably to the terms prescribed in the agreement for the sale, with the same force and effect as if an order for the sale had preceded the sale." At the time this decree was entered there were two judgments held by George H. Smith, which had been entered against the

decedent in his lifetime, and were liens of record upon this land. The administrators subsequently tendered a deed for the land to Clayton Wiggins, which he refused to accept until the land was released from the lien of these judgments. The administrators then brought this action in the court of common pleas, to recover the amount of the purchase money. They offered in evidence the agreement between the parties, the petition of the parties presented to the court on April 9, 1898, above recited, and the decree of the court thereon. They also proved the tender of the deed and offered the same in evidence, and they produced evidence of the refusal of the defendant to accept the deed and pay the purchase money. The defendant offered in evidence the judgments which were liens upon the land, and produced evidence which established that there remained due and unpaid on said judgments an aggregate amount of about $1,000. It is clearly established that the defendant was willing to accept the deed and settle for the purchase money if these incumbrances upon the title were removed, or he was willing to pay and discharge those judgments. The plaintiffs contended that the decree of the orphans' court, approving the private sale, divested the lien of the judgments, and that, therefore, they were entitled to receive the entire purchase money, but they admitted that the judgments were liens upon the land at the time of the sale.

The decree of the court approved and confirmed the sale upon the terms in the petition, of which the articles of agreement were a part set forth to have been made. The agreement was, therefore, a part of the decree, and, in accordance with its terms, the purchaser had a right to demand a title in fee simple, clear of all incumberances. The only question presented by this record involves the effect of this private sale upon the lien of the judgments. Were the liens of these judgments divested by the decree of the court approving the private sale of the land? From the consideration of this question the Act of April 18, 1853, P. L. 503, is eliminated, for by the Act of March 23, 1867, P. L. 43, the lien of debts of record is saved from discharge by private sales made by order of court under the former act, and in the present case that statute, if it is to have effect, would preserve the lien of these judgments. If the contention of the plaintiffs is to be sustained, it must be by virtue

of the Act of May 9, 1889, P. L. 182, which authorizes the
orphans' court, in all cases where, under existing laws, the court
has power to order the sale of real estate for the payment of
debts of decedents, and for other purposes, to decree and ap-
prove a private sale, if, in the opinion of the court, under all
the circumstances, a better price can be obtained at private than
at public sale, as where the interest shall be undivided, or for
other sufficient cause. It is manifest that this act is not self-
sustaining; it can only have effect where, under existing laws,
the court had power to order the sale of real estate for the pay-
ment of debts of decedents, and for other purposes. When,
under existing laws, the court had jurisdiction to decree a sale,
this statute vested it with a discretion to determine whether
the sale should be public or private. When a former statute
provided for the effect which a private sale should have upon
liens, the act of 1887 did not change the effect. The position
of the plaintiffs can only be sustained, if at all, under the
jurisdiction conferred by the Act of March 29, 1832, P. L. 190,
and the supplements thereto, as affected by the manner of the
exercise of that jurisdiction authorized by the act of 1889.
The acts are to be construed together; the jurisdiction to de-
cree a sale must be found in, and exercised in accordance with,
the provisions of the act of 1832, the act of 1889 touched noth-
ing but the manner of making the sale, and vested the court
with a discretion to decree and approve either a public or pri-
vate sale. The Act of February 24, 1834, P. L. 70, section 20,
provided that real estate sold for the payment of debts of the
decedent, by direction of the orphans' court, should not be
liable in the hands of the purchaser for the debts of the deced-
ent, and subsequent acts have saved the lien of mortgages un-
der certain circumstances; but this legislation did not amplify
the powers of the court to decree a sale, it related solely to the
effect of the sale upon liens. A public sale under the act of
1832 discharges the lien of judgments, and when the court de-
crees, by virtue of the supplementary act of 1889, the sale shall
be private, the effect upon liens would seem to be the same, pro-
vided that the authority to decree the sale and the manner of
its execution is in other respects in accordance with the pro-
visions of the former act.

The question resolves itself into one of jurisdiction, for, if

the orphans' court had jurisdiction to enter the decree upon which this action is founded, the decree cannot be attacked collaterally in this action. In order to determine this question we must turn to the petition upon which the decree was based. " It is settled law that the facts set out in the petition determine the jurisdiction : " Torrance v. Torrance, 53 Pa. 505 ; Bennett v. Hayden, 145 Pa. 586 ; Greenawalt's Appeal, 37 Pa. 95 ; Spencer v. Jennings, 114 Pa. 618. The jurisdiction of the orphans' court to enter this decree was entirely dependent upon the 31st and 33d sections of the Act of 1832, P. L. 190. The 31st section confers jurisdiction to authorize a sale of real estate, " on the application of the executor or administrator setting forth that the personal estate of the decedent is insufficient for the payment of debts, and maintenance and education of his minor children, or for the purpose of paying the debts alone." The 33d section enacts, " that no authority for the sale or mortgage of real estate shall be granted until the executor or administrator shall have exhibited to the court a true and correct inventory and conscionable appraisement of all the personal property whatsoever of the decedent, together with a full and correct statement of all the real estate of said decedent, wheresoever situated, which has come to his knowledge ; and also, a true and just account, upon oath or affirmation, of all the debts of the decedent which have come to his knowledge."

It is manifest that the petition in the present case did not meet the requirements of the statute. The only mention of debts of the decedent in the petition is in the following words : " That the said administrators obtained an order from said court to sell said lands for payment of debts of said decedent from said court, on petition filed September 13, 1897, and exposed said premises at public sale in October, 1897, on the premises, and the same were unsold for want of bidders, a return of which proceeding was made to this honorable court." This was a mere reference to a former proceeding, the petition in which may have been as far wide of the requirements of the statute as that in the present case. There was no reference to the number and term of that former proceeding, nor was it made a part of the petition in this case. The present petition simply stated that the administrators had procured an order from the court, and it did not allege that the facts set forth in the peti-

tion upon which that order was obtained were true. It alleges that a return to that order of sale had been made to the court, but it does not state when that return had been made, or what were the subsequent proceedings. This petition makes no attempt to set forth that the personal estate of the decedent was insufficient for the payment of his debts, nor a true or perfect inventory or appraisement of the personal estate, nor a correct statement of the real estate, nor a true or just account, upon oath, of the debts of the decedent. The allegations contained in the petition, that the condition of said property and the affairs of said estate require that it be settled promptly, and that it was for the best interest of said estate that said agreement be ratified and fully executed, did not bring the case within the jurisdiction of the orphans' court to decree a sale under the terms of the act of 1832, which does not authorize a sale upon such grounds. This was a new proceeding, and it was essential that the petition should within itself contain all the necessary jurisdictional averments. The orphans' court was without jurisdiction to enter the decree which is the foundation of this action.

The appellants complain in the tenth assignment of error of the rejection of the following offer of evidence on the part of the plaintiffs: " We offer in evidence the petition of the administrators and the order of the court obtained thereon, and return thereto, for the sale of this property for payment of debts. The order was obtained on August 19, 1897." The learned court below sustained an objection to this offer. If this petition of the administrators was not of record, it was clearly not evidence. We assume, therefore, that this was the offer of a record of some court. The learned court below, in rejecting the evidence, said: " That order was ended without any effect, and we will disallow the offer and give you an exception." As the plaintiffs had not clearly identified their record in their offer, we must assume that the learned court below, which then had the record before it, was correct when it made this statement. The offer of this evidence was an attempt to bolster up a defective record by showing that the court had had jurisdiction to decree a sale in some former proceeding which had been permitted to die. It is proper here to note that this evidence which was rejected has been printed in the appellants'

paper-book and clearly shows that that proceeding had fallen and that no attempt has been made to revive it. The petition dated April 2, 1898, presented to the court on the 9th or the same month, was the beginning of an entirely new proceeding, and upon that foundation alone the decree of April 9, 1898, must stand, or it must fall.

Counsel have devoted some attention to the absence of notice in this case, but that question does not seem to be raised by any of the assignments of error. As the act of 1889 is silent upon the subject of notice, it would seem that before a private sale under that act is confirmed, notice should be given, which would be equivalent to the notice required under the pre-existing legislation which it is necessary to invoke in order to sustain the jurisdiction of the court to decree the sale. This was the practice adopted in Smith's Estate, 188 Pa. 222. It may well be doubted whether the final confirmation of a private sale under the act of 1889, by a decree which precluded any notice whatever to creditors, or others, ought not to be set aside upon proper application. In this case we base our decision upon the insufficiency of the facts set forth in the petition to confer jurisdiction upon the orphans' court to decree any sale.

Judgment affirmed.