Argued on rehearing January 5, decree of lower court reversed January 30, 1917.

Second petition for rehearing granted and opinion of first rehearing reversing former opinion and decree below, approved March 27, 1917.

## STADELMAN *v.* MINER.*

(155 Pac. 708; 163 Pac. 585; 163 Pac. 983.)

**Executors and Administrators — Administrator's Sale — Validity — Notice.**

1. Under Section 1254, L. O. L., providing that on the filing of an administrator's application to sell real property a citation shall issue to the devisees and heirs to appear at a term of court therein mentioned, not less than 10 days after the service of such citation to show cause, if any, against the sale, and Section 1255 providing for service of the citation by summons and by publication, the County Court's failure to allow the parties cited 10 days after the service of notice in which to make an appearance was fatal to its jurisdiction, and its order of sale, made 10 days too soon, was void.

---

*On the liability of the heirs for obligations of the ancestor, see note in 21 L. R. A. 89.

On presumption of innocence in a civil action, see note in 33 L. R. A. (N. S.) 841.    REPORTER.

**Executors and Administrators—Sale of Realty—"Proceedings in Rem."**

2. A proceeding to subject the realty of a decedent to the payment of his debts is not a "proceeding *in rem,*" and is not even a common-law proceeding, but is purely statutory.

**Descent and Distribution — Title of Heir — Debts of Decedent — Statute.**

3. Under Section 7348, L. O. L., providing that the property of a decedent shall descend on the heirs, subject to the debts of the decedent, and Section 1185, entitling an administrator to the possession and control of both the real and personal property until the administration is completed, the heir takes the title to the decedent's real estate, subject only to the lien of such debts as are proved against the estate, and which the personal property is insufficient to pay.

[As to implied power of executor to sell real estate of testator, see note in Ann. Cas. 1916D, 410.]

**Descent and Distribution—Title of Heir—Sale for Debts.**

4. The interest of the heir in the real estate of a decedent, burdened with the debts of the decedent, is a valuable property right; and, when it is attempted by statutory means to deprive him thereof the procedure pointed out by the statutes should at least be substantially followed.

**Executors and Administrators—"Due Process of Law"—Deprivation of Property—Administration of Estates—Curative Statute.**

5. The County Court's order for an administrator's sale of realty, made 10 days earlier than allowed by Sections 1254, 1255, L. O. L., providing for notice to heirs, etc., and void for such defect in its jurisdiction, was not cured or validated by Laws of 1907, page 330, Section 3 (Section 7156, L. O. L.), or Laws of 1913, page 752, Section 3, in terms curing such defect, if the legislature had the power to cure it, since to give the acts a curative, validating effect would divest the title of the heirs without notice in an attempt to take away their property and to vest and confirm it in the purchaser, without "due process of law," which means a course of legal proceedings according to the rules and principles which have been established in our system of jurisprudence for the protection and enforcement of private rights, and which, whenever necessary for the protection of the parties, must give them an opportunity to be heard respecting the justice of the judgment sought.

**Executors and Administrators — Administrator's Sale — Invalidity — Purchaser's Lien for Purchase Price.**

6. On holding an administrator's sale void for want of the court's jurisdiction to order sale, the court properly gave the purchaser a lien upon the property for what he had paid, and for all taxes which had been paid, with legal interest thereon.

**Courts—Probate Courts—County Court.**

7. The County Court sitting in probate acts judicially.

**Executors and Administrators—Sale of Land—Judicial Sale.**

8. An administrator's sale of land by order of the probate court to pay debts of the estate is a "judicial sale."

**Executors and Administrators—Limitation of Action—Setting Aside Administrator's Sale.**

9. Laws of 1907, page 330, Section 3 (Section 7156, L. O. L), providing that when any real estate of a decedent has been sold by an administrator under order of the County Court and the purchaser shall have paid the purchase money and the sale shall have been made in good faith for the payment of debts against the estate and shall have been confirmed by the County Court, it shall be confirmed, notwithstanding any irregularities or defects in the proceedings prior to the sale, does not operate as a statute of limitations against the heirs of a decedent whose land was sold by his administrator, so as to bar their suit to set aside the administrator's sale, not brought within 5 years from the sale, as it is beyond the power of the legislature to transfer the owner's title to the purchaser by lapse of time alone.

**Property—Wild Land—Constructive Possession.**

10. The constructive possession of wild land not in the actual possession of anyone must be in the person holding the legal title.

**Divorce —Validity—Presumption and Burden of Proof.**

11. In a suit by the heirs of a decedent to quiet title to certain real property as against the purchasers at the administrator's sale, who also claimed under an assignment of the dower right of the widow of the decedent, evidence *held* not sufficient to overcome the presumption of regularity appearing on the face of the decree, whereby the decedent obtained a divorce before marrying a second wife.

**Evidence—Presumption of Innocence.**

12. A person is to be presumed innocent of wrong until that presumption is overcome by evidence.

**Costs—Appeal—Prevailing Party.**

13. Where both parties to a suit appealed and both failed on their appeal, neither party would recover costs in the appellate court.

ON FIRST REHEARING.

**Time—Computation—Days—Publication of Notice—"Four Weeks and Ten Days."**

14. In probate proceedings to sell lands under Section 1254, L. O. L., providing that citation shall issue to heirs to appear not less than 10 days after service, and Section 1255, requiring 4 weeks' service by publication on unknown nonresident heirs, the 4 weeks and 10 days mean 38 days, to be computed by excluding the first day of publication and including the day upon which the order of sale is made, and an order made less than 38 days after the first day of publication is premature.

**Judgment—Defects and Irregularities—Collateral Attack.**

15. Where a defendant in a civil action is personally served with summons and complaint requiring him to appear and answer at a specified time and place, if judgment be prematurely rendered against him he can have the irregularities corrected by appearance and motion on return day, but if he fails to so move and offers no excuse

for his delay, he is bound by the judgment, which, though voidable, cannot be collaterally assailed.

**Judgment—Defects—Collateral Attack.**

16. When complete service by publication is made of process, and before return day the relief sought is granted, the party affected thereby may, under Section 59, L. O. L., at any time within a year from the entry of judgment, be allowed to defend on terms that may be just, but such judgment is voidable only, and not subject to collateral attack, and is conclusive, unless set aside within the time limited.

**Executors and Administrators—Order to Sell Real Estate—Service of Publication.**

17. In probate proceedings to sell lands where administrator was not charged with fraud or negligence in publication of citation to nonresident heirs, a license to sell made less than 38 days after date of first publication and so premature under Sections 1254, 1255, L. O. L., *held* not void, but merely voidable, and not subject to collateral attack.

### ON SECOND REHEARING.

**Judgment—Collateral Attack.**

18. An order of the County Court, sitting for the transaction of probate business, directing a sale of land belonging to the estate of a decedent, could not be attacked in a suit to quiet title to the land.

From Coos: JOHN S. COKE, Judge.

Department 2.   Statement by MR. JUSTICE McBRIDE.

This is a suit to quiet title to certain real property in Coos County, Oregon. The plaintiffs Stadelman and Fletcher are the children of Charles W. Fletcher, who died in Coos County, in January, 1897, and the other plaintiff claims a half interest in the property by virtue of a deed from Mrs. Stadelman and her brother to him. The facts are these: In September, 1856, Charles W. Fletcher was married to Lucinda Hines, in the state of Wisconsin, and thereafter removed with her to Sheboygan Falls, Wisconsin. Minnie Evvia, now Mrs. Stadelman, and Henry Hines Fletcher, who claim to be the sole heirs of Charles W. Fletcher, which claim is abundantly supported by the testimony, were born at Sheboygan. The Fletchers finally separated, Mrs. Fletcher living at Sheboygan, and her husband working in a sawmill

some thirty miles distant. The cause of the separation is not clearly shown, but the testimony is to the effect that in 1874 or 1875 Fletcher came to Coos Bay, and it does not appear therefrom that he ever returned to Wisconsin, except from some circumstances connected with a divorce from his wife, which will be noticed hereafter. About 1869 or 1870 Mrs. Fletcher left Wisconsin and lived for a time with a relative in Minnesota, going from there to Kansas City, Missouri, and later to St. Louis, where she was residing at the time of her death, which occurred in October, 1910. In 1877 Fletcher secured a divorce from his wife in a Michigan Circuit Court. The service was by publication and the proceedings seem to be regular on their face. There is a certified copy of an affidavit for publication of summons signed by Fletcher and sworn to before a Wisconsin justice of the peace. The complaint is also verified by him before a justice of the peace of Sheboygan, Wisconsin. Witnesses who knew Fletcher intimately testify that they never knew him to go east after he first came to Coos County, and think it improbable that he ever did so. The complaint in the Wisconsin divorce suit alleged, among other matters, that the plaintiff therein had resided in that state for more than one year next preceding the commencement of the suit and stated all the necessary jurisdictional facts. In 1882 Fletcher was married to Maggie E. Hendricks, with whom he lived until the date of his death. Subsequently upon petition of Maggie Fletcher and John F. Hall, Hall was duly appointed administrator of the estate. The petition was regular in all respects and alleged that the next of kin were Maggie Fletcher, his widow, and Henry and Minnie Fletcher, his children, whose residence it was claimed was unknown to petitioner, but was believed to be somewhere

in the state of Michigan.    Thereafter the administration of the estate proceeded regularly until June 6, 1902, when the administrator filed a petition showing the total receipts and disbursements up to that date, which indicated that there were then unpaid claims against the estate, including costs of administration, amounting to $740.94, and there was on hand $228.75, leaving a deficiency of $512.19, and asking for an order to sell so much of the real property as might be necessary to pay the remaining debts and expenses of administration.    Whereupon the court, on June 6, 1902, made the following order:

"In the Matter of the Estate of C. W. Fletcher, Deceased.

"John F. Hall, administrator of the above-entitled estate, having filed his petition herein praying for an order of this court, authorizing the sale of the real estate or a portion of the same belonging to said estate, and it appearing from said petition that it is necessary to sell the whole or some portion of the real estate of said decedent to pay the charges of administration of decedent's estate; that the names of next of kin or heirs at law of said deceased are as follows: Maggie Fletcher (now Young) widow, residing at Windling, Lane County, Oregon, Henry Fletcher, a son, whose age and place of residence is unknown, Minnie Fletcher a daughter, whose age and place of residence is unknown; it is therefore hereby ordered by this court that the said Maggie Fletcher (now Young), Henry Fletcher, and Minnie Fletcher, heirs at law of said deceased, and all others unknown, and all persons interested in said estate, appear before the county court of Coos County, Oregon, at the Court House at Coquille City, in Coos County, Oregon, on the 14th day of July, 1902, and show cause if any, why an order should not be granted said administrator to sell so much of the real estate belonging to said deceased as shall be necessary to pay the claims against said estate,

83 Or.—23

the expenses of administration, and expenses of making such sale. And it appearing to the court that the place of residence of said Henry Fletcher and Minnie Fletcher is unknown, it is, therefore, ordered that a citation be published in the 'Coos Bay News,' a weekly newspaper, printed and published at Marshfield, Coos County, Oregon, four weeks successively, requiring the same Henry Fletcher and Minnie Fletcher, and all others unknown, and persons interested in said estate, to appear on said 16th day of July, 1902, at the Court House in Coquille City, Coos County, Oregon, to show cause, if any, why the prayer of the petitioner should not be granted.

"L. HARLOCKER, Judge."

Upon this order a citation was published reciting the order and requiring the heirs and all persons interested to appear on July 16, 1902, and show cause why the prayer of the petition should not be granted. The citation was published for four weeks, and upon the return day a hearing was had and the order of sale granted. The property was bid in by one August Nelson, a report of the sale made to the county court and duly confirmed, and a deed made to the purchaser. The defendants claim title by mesne conveyances from this purchaser and by a conveyance from Mrs. Maggie Fletcher (now Young) of her alleged dower interest in the property. Upon the trial the court held the sale void as to the plaintiffs, but decreed that the purchase price paid by defendants and certain taxes paid by them upon the property should be a lien upon the land in their favor. There were other matters adjudicated not necessary to be here stated. From this decree defendants appeal. Plaintiffs also took a cross-appeal from that part of the decree which declared Maggie Fletcher (now Maggie Fletcher Young), to have been the lawful wife of Charles W. Fletcher, and the defendants to be successors to her dower interest in the estate.

For appellants there was a brief and an oral argument by *Mr. Guy C. H. Corliss.*

For respondents there was a brief and an oral argument by *Mr. Harry G. Hoy.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

Several defects in the administrator's sale are pointed out by plaintiffs, but we think none of them fatal to the jurisdiction except one. Sections 1254, 1255, L. O. L., allow parties cited to appear and show cause against a proposed sale ten days after the service of notice in which to make an appearance. This requirement was not observed in this case, and the order of sale was made ten days too soon and is confessedly void, unless certain curative acts passed by the legislature in 1907 and 1913 remedy the defect. The act of 1907 (Section 7156, L. O. L.), reads as follows:

"When any real estate of a decedent has been heretofore, or shall be hereafter, sold by any executor or administrator, under or by virtue of any license or order of any county or probate court of this state, and the purchaser shall have paid the purchase money for the same, and said sale shall have been made in good faith, in order to provide for the payment of the claims against said estate (and the money derived from such sale shall have been used for the payment of such claim), and such sales shall not have been set aside by such county or probate court, but shall have been confirmed or acquiesced in by such county or probate court, and the period of five years shall have elapsed after the making and confirmation of said sale, then in such case all such sales shall be and are hereby confirmed and approved, notwithstanding any irregularities, defects, or informalities in the proceedings prior to said sale, and shall be sufficient to sustain an executor's or ad-

ministrator's deed to such purchaser, conveying all the right, title, and interest that such decedent had in such real property, and in case such deed shall not have been or is not given, it shall entitle such purchaser to such deed, or if such deed has been or is given, and if through mistake or omission in said deed, or defect in its execution, the same shall be inoperative, the same is hereby made sufficient to convey the title to the real property described in said deed; and when such facts shall be made to appear, either by plaintiff or defendant, in any suit in equity to quiet title to such real property · against the heirs, or their assigns, of the deceased person whose property shall have been sold in the proper court for such suits, then such court shall make its decree quieting such title, and when necessary compelling and ordering conveyances of the same to be made to such purchaser, his heirs or assigns, as if a valid contract to convey said real property had been made by such deceased person in his lifetime; and no action shall be maintained by such heirs, or their heirs or assigns, to dispossess any such purchaser, his heirs or assigns, after the expiration of five years from any such sale and confirmation thereof.''

The act of 1913 (Section 3 of Chapter 363, Laws of 1913) is more specific; reading in part as follows:

''When any real estate of a decedent has been heretofore sold by any executor or administrator under or by virtue of any license or order of any county or probate court of this state and the purchaser shall have paid the purchase money for the same and said sale shall have been made in good faith and such sale shall not have been set aside by such county or probate court, but shall have been confirmed or acquiesced in by such county or probate court, and the period of one year shall have elapsed after the confirmation of such sale, then in such case, such sale shall be and is hereby confirmed and approved, notwithstanding that 10 days shall not have elapsed or expired since the service by publication of the citation, or any other irregularities, defects, or informalities in any application for such

license or order, or in the issuance or service of citation or in any other proceedings prior to such sale, and shall be sufficient to sustain an executor's or administrator's deed to such purchaser conveying all the right, title and interest that said decedent had in such real property, and in case such deed shall not have been given it shall entitle such purchaser to such deed, or if such deed has been or is given and is in any way defective, the same is hereby declared sufficient to convey the title to the real property described in such deed.''

The remainder of the section contains substantially the same provisions as Section 7156, *supra*. On behalf of defendants it is urged in a brief and argument, exhibiting much research into the authorities, that the proceeding to subject the real property of a decedent to the payment of debts by an administrator's sale is purely a proceeding *in rem;* that it was competent for the legislature to have provided in the first instance that such sales could be made without notice to the heir, and such being the case that the legislature can by a curative act heal any defect arising from a want of compliance with any requirement of a statute which it could lawfully have omitted in the first place. In discussing this branch of the subject we are naturally led to first consider how far with reference to our statute the proceedings in an administrator's sale are *in rem* and to what extent they are *in personam*. One of the leading cases on this subject is *Grignon's Lessee* v. *Astor,* 43 U. S. (2 How.) 318 (11 L. Ed. 283), wherein a statute of Michigan provided that when the goods and chattels of a person deceased should not be sufficient to pay his debts, upon representation thereof, and the same being made to appear to the supreme judicial court or to the county court, said courts should be authorized to license the executor or administrator to

sell real estate so far as necessary to satisfy the same.
Another section of the act provided that "every repre-
sentation made as aforesaid shall be accompanied by
a certificate from the judge of probate," the contents
of which are particularly described. It also provided
that the court, previous to passing on the representa-
tion, should cause due notice to be given to all parties
or their guardians to show cause against the granting
of the license; and for the publication of such notices
for three weeks in some newspaper. The adminis-
trator by its terms was required to post notices of the
sale for thirty days preceding the same. The plaintiff
brought ejectment claiming under the heirs of Grignon.
The defendant asserted title by virtue of an admin-
istrator's sale and deed and introduced the order of
sale, license to sell, and said deed. It was stated in
defendant's brief:

"The plaintiff did not attempt by any evidence
directly to impeach the proceedings, by showing want
of notice, want of evidence, want of strict conformity to
law, although Paul Grignon, the administrator, and
Augustine Grignon, the purchaser, had both united to
defeat the sale under the order by a subsequent con-
veyance, and were both produced as witnesses for the
plaintiff."

As to the jurisdiction, the Supreme Court held:

"No other requisites to the jurisdiction of the County
Court are prescribed than the death of Grignon, the
insufficiency of his personal estate to pay his debts,
and a representation to the County Court where he
dwelt or his real estate was situate, making these facts
appear to the court."

The opinion then suggests that the papers showing
the facts upon which orders of this kind are made are
frequently lost or mislaid, and, in effect, holds that the

jurisdiction having once attached by the filing of a petition, regular upon its face, and an order and license having been made, compliance with the other statutory requirements will be presumed. Among other things, the court observes:

"But though the order of the court sets forth no facts on which it was founded, the license to the administrator is full and explicit showing what was considered and adjudicated on the petition and evidence, and that every requisition of the law had been complied with before the order was made, by proof of the existence of all the facts on which the power to make it depended."

The sum and substance of the whole case is that in the absence of proof to the contrary, and order of a probate court to sell realty, accompanied by its license reciting compliance with all the jurisdictional requirements, will be taken as absolute verity. Herein that case differs from the one at bar where the record itself discloses an absolute failure on the part of the administrator and the court to comply with an important jurisdictional requirement in the matter of giving notice to absent heirs. In the case cited, the court assumed that notice had been given. In the case at bar, it affirmatively appears and is admitted that legal notice had not been given. In a *dictum,* which seems wholly outside the question actually involved, the court, following the case of *M'Pherson* v. *Cunliff et al.,* 11 Serg. & R. (Pa.) 432 (14 Am. Dec. 642), holds that in a proceeding to sell realty to pay the debts of an intestate there are no adversary parties; but the proceeding is *in rem* and analogous to proceedings in admiralty, where the seizure of the *res* is supposed to give notice to all the world of the pendency of the suit. The parallel is not a happy one. A ship, for instance, is usually in charge

of some person having either a property interest or an interest in her use and always representing her owners. The constructive possession by the administrator of a tract of land situated in a distant state which, as in this instance, is in the actual possession of nobody, is surely not such that infant or resident heirs should be deemed to have constructive notice of a proceeding to subject their inheritance to the payment of alleged debts of their ancestor; and this is particularly the case where the law has expressly prohibited the administrator from disposing of their property without notice to them. The Pennsylvania case cited by Mr. Justice BALDWIN in the opinion just quoted, does, in fact, hold that the proceedings in the Orphan's Court of Pennsylvania for the sale of lands by an administrator are in the nature of a proceeding *in rem,* but it nowhere intimates that any statutory requirement necessary to authorize a sale or to bring the parties into court may be dispensed with. It merely holds that after a lapse of many years the courts would presume that the requirements of the statute had been complied with; saying:

"Whenever the sales are called in question, we find the courts declaring that these irregularities must be overlooked; after a lapse of years, all must be presumed to have been solemnly transacted. * * The presumption always is, that they were regular, and it lies on the party impugning them to show their irregularity. * * A purchaser is not bound to look into all the circumstances, nor to go through all the proceedings from beginning to end; on the contrary, the general impression the decisions give is this, that a purchaser has a right to presume that the court have taken the necessary steps to investigate the rights of the parties, and that it has, on that investigaion, properly decreed a sale. *Then he is to see that all proper parties are before the court;* and he is further to see

that in taking the conveyance, he takes a title that cannot be impeached·*aliunde;* and he has no right to call on the court to protect him from a title, not at issue in the cause.''

1. So it would seem that whether we treat an administrator's sale as a proceeding *in rem* or *in personam,* a failure to bring the interested parties into court when the statute requires this to be done is fatal to the jurisdiction. In *Furth* v. *United States Mortgage & Trust Co.,* 13 Wash. 73 (42 Pac. 523), it was held that the administration of an estate was a proceeding *in rem* and that a citation directed to ''all persons interested'' without giving the names of the heirs, being within the terms of the statute, was sufficient to give the court jurisdiction. It was further held that where the statute required that the notice should be published in such paper as the court should designate, and the order made by the court failed to designate a particular paper, proof that the notice had been published regularly in a newspaper of general circulation was sufficient; the omission to designate the particular paper being a mere irregularity not going to the jurisdiction. It is safe to say that if it had appeared that the notice had not been published at all, or had required the party to appear within a time short of that required by law and the hearing and order of sale had been made with such defects, the same court would have held it invalid for want of jurisdiction in the probate court to make it. *In re Smith's Estate,* 188 Pa. 222 (41 Atl. 542), it was held that notice of application by an executor to sell the real estate of a decedent for the purpose of paying debts need not be served upon the heirs, and the same is held in a number of Pennsylvania cases, notably: *Murphy's Appeal,* 8 Watts & S. (Pa.) 165; *Weaver's Appeal,* 19 Pa. St. 416; *West Hickory Mining*

*Association* v. *Reed,* 80 Pa. St. 38.    The reason given
for this holding is that there is no statute in Pennsyl-
vania requiring such notice.    Although not cited in
the opinion it is evident that these cases all hark back
to *M'Pherson* v. *Cunliff, supra,* wherein it is held that
the proceeding is strictly *in rem;* and where the law
does not prescribe notice the courts will not require it.
These cases have been followed in other states, in some
to the extent of holding that statutes requiring notice
may be disregarded by the courts without rendering a
sale void; but the conclusions of the courts of this state
and the recent decisions of a majority of the states are
to the effect that such a sale is absolutely a nullity:
*Fiske* v. *Kellogg,* 3 Or. 503; *Smith* v. *Whiting,* 55 Or.
393 (106 Pac. 791); *Marks* v.*Wilson,* 72 Or. 5 (143 Pac.
906).    In fact, counsel for defendant does not question
this proposition and discusses it only with reference to
the effect of the curative statutes referred to.    His
proposition may be stated briefly thus: (1) The sale
was void for want of service of a citation upon the
heirs.    (2) Being a proceeding *in rem* the legislature
might have dispensed with service of citation in the
first instance.    (3) What the legislature might have
originally dispensed with it can cure by subsequent leg-
islation.    (4) It has so legislated, and, therefore, de-
fendants' title is now perfect.    The first proposition
being conceded need not be discussed.

2, 3. The answer to the second is that in this state
proceedings to subject the realty of a decedent to the
payment of debts are not proceedings *in rem.*    They
are not even common-law proceedings, but purely stat-
utory.    At common law the real property of a de-
cedent could not be subjected to his simple contract
debts.    It descended directly to the heir, and in case

of deficiency of personal property such creditors could not collect the debts: 11 Am. & Eng. Enc. Law (2 ed.), 838.   To remove this injustice of the common law, Oregon, as well as most of the states of the Union, enacted a statute providing that such property should descend to the heir subject to the debts of the decedent: Section 7348, L. O. L.   It being found that possession by the heir during administration was attended with many inconveniences, it was further enacted in many of the states, including Oregon, that the administrator should be entitled to the possession and control of the property, both real and personal, until the administration was completed: Section 1185, L. O. L.   It will be seen, then, that under the statute as well as at common law the heir was still the owner of the real estate of the decedent subject by statute only to the lien of such debts as might be proved against the estate and not solvable from personalty and to the temporary possession of the administrator for the purpose of administration.   Having thus impressed upon the property of the heir a special burden or liability unknown to the common law, the statute prescribed the mode by which that liability should become fixed and the realty disposed of to extinguish it.   It recognizes, as it should, the fact that the actual fee and ownership of the property is in the heir, and by way of giving him his day in court requires that a petition shall be filed showing: (1) The amount of sales of personal property; (2) the charges, expenses, and claims still unsatisfied; (3) a description of the property and its probable value, and the amount and nature of the liens thereon; (4) the names, ages, and residence of the heirs so far as known, and other particulars not necessary here to mention. Then it requires that a citation shall issue, and in certain cases, like the present, it is required that it shall

be published for not less than four weeks, and a notice to the heir to appear within ten days after the service of the citation to show cause against the prayer of the petition.

4. The interest of the heir in the real estate of his ancestor is a valuable property right. The land is his burdened only with the debts of his ancestor, and when it is attempted by statutory means to deprive him of his property, the procedure pointed out by statute should be at least substantially followed. It may well be questioned whether since the adoption of the Fourteenth Amendment to the Constitution it is competent for the legislature to pass any law that would deprive an heir of his right to the lands of his ancestor without notice and without his day in court. It is true that it would be competent for it to pass a law abolishing or changing the law of descents, but so long as this is not done and the estate is permitted to descend as at common law, due process of law must be observed before his property can be taken from him. That proceedings for the sale of a decedent's property are not *in rem* is settled in this state by *Fiske* v. *Kellogg, supra,* where the same contention was made as in the present case with the result that the court, adopting the language used in *Schneider* v. *McFarland,* 2 Cow. 462, says:

"The administrator is not, therefore, the sole representative of the real estate of the deceased in these proceedings. He is the moving party in behalf of the creditors. His object is by special proceeding before a court of limited jurisdiction to turn the real estate into personalty with a view to the payment of debts. The heir has a right to contest his allegations, and show that no such necessity exists. * * It is a proceeding by which the infant heir may be deprived

of his inheritance, and to which he is an adversary and necessary party.''

But in our view it is not important to speculate upon the proposition as to whether or not the legislature might have dispensed with notice of the application of an administrator to sell land. The fact remains that it has not done so, and that in the instance before us the notice to heirs required by law was not given; and the sale was absolutely void for want of jurisdiction in the court to order it made.

5–8. This narrows the question down to a single proposition, viz.: Do the curative acts of 1913 and 1907, or either of them, have the effect of doing away with the lack of jurisdiction of the court to order the sale and operate to confirm or rather to pass title to the property from the heirs and vest it in the defendants? On principle it would seem plain that they could not. Let us consider first the act of 1913. It must be conceded that if the legislature had power to cure a defect of the character involved here, that act has done so. We would then have this situation: On the first day of June, 1913, plaintiffs had the legal title and the right to recover from defendants the property in controversy, and this suit to so recover it had been commenced and was actually in progress. On the 2d of June, 1913, when this act went into effect their title passed to defendants and their cause of suit, perfectly good upon the facts, had been extinguished by legislative fiat so that in no event could they recover upon it. This final analysis of the effect of the alleged curative act, if it is valid, suggests to the average lawyer, educated in the atmosphere of respect for vested rights, the right of every man to his ''day in court,'' and the right to due process of law guaranteed by the Fourteenth Amendment, a proposition so re-

pugnant that it would seem at first glance to be beyond discussion; and were it not that many eminent jurists, including a venerated and able justice of this court, have approved curative acts possessing many of the features of the one under consideration, and the further fact that it has been presented here by eminent counsel and argued with consummate skill and ability, we would be disposed to say, without further consideration of authorities, that the act violates the constitution in that it attempts to deprive the plaintiffs of their land without due process of law and is a legislative interference with pending litigation and a usurpation of the judicial power forbidden by the constitution.

To consider all or even a tithe of the cases in which curative statutes have been unheld would be to write a treatise upon that class of legislation. We will, however, consider a few of the leading cases upon the subject beginning with *Mitchell* v. *Campbell,* 19 Or. 198 (24 Pac. 455), which must be overruled if the decision of the lower court in the instant case is affirmed. In that case the proceedings were even more defective than in the case at bar. The petition stated almost no jurisdictional facts, but the court made an order directing that a citation issue to the heir, and beyond this the record is silent. There was nothing to show that the citation ever in fact issued or was served, that any notice was ever published, that any hearing was had, any order of sale made, or any confirmation of sale—nothing but the petition, order for citation, and administrator's deed to the property. The supreme court, speaking through Mr. Chief Justice THAYER, held the curative acts of 1874 and 1878 in many respects similar to the one at bar were sufficient to pass the title. The opinion itself does not specify the par-

ticular defects which the appellant complained of and the briefs are not clear upon that subject, but an examination of the transcript discloses the facts to have been as stated above. Now, the act of 1874 only assumed to cure such sales as had been licensed and approved by the County Court, and there was not a particle of testimony that the court had either licensed or approved the sale. The act of 1878 only professes to legitimatize sales which had been "confirmed or acquiesced in by the court," and yet there was no testimony as to any confirmation or acquiescence. The case was reversed on another ground, but the opinion bears the earmarks of a very cursory examination of the law and the facts.

As to the law the learned justice followed the case of *Wilkinson* v. *Leland,* 2 Pet. 627 (7 L. Ed. 542), which went to the Supreme Court of the United States from the state of Rhode Island, and arose in this wise: In 1787 one Jonathan Jenckes, a resident of New Hampshire, died in that state leaving property there and also property and many debts in the state of Rhode Island. Cynthia Jenckes, his wife, was his New Hampshire executrix. Without being appointed executrix in Rhode Island she applied to a probate court in that state for a license to sell the Rhode Island realty for the purpose of paying debts, and the license was granted. The land was sold by her under this license, but the purchaser being doubtful as to her authority to sell under the circumstances she covenanted to apply to the legislature of Rhode Island for an act confirming the sale, which she did and the act was passed. Thirty-six years afterward Leland as successor to Jenckes' heirs brought ejectment against Wilkinson, who succeeded to the title made by the executrix, to recover the property, claiming that the

deed of the executrix being void the act of the Rhode Island legislature was also ineffectual. Being defeated in the Circuit Court, the case went on a writ of error to the Supreme Court. There was certainly no lack of talent in the case, as Daniel Webster was one of counsel for the plaintiff in error and William Wirt was of counsel for the defendant, and Mr. Justice STORY rendered the opinion, which held that the legislature of Rhode Island had ample power to pass the act and that it violated no provision of the Constitution of the United States and disturbed no vested right; but it is to be noted that Rhode Island at that time had no constitution, as its fundamental law was a charter from the British crown giving it the same right of legislation possessed by the British Parliament. We use the language of counsel for the defendant in error:

"Acts authorizing foreign executors to sell real estate, and acts confirming void deeds, have been passed, ever since the settlement of the state. Having no written constitution, usage is the law of Rhode Island. The papers in the case clearly show that the legislature of that state has always exercised supreme legislative, executive, and judicial power (citing a great number of instances where judicial power had been exercised by the legislature). There is an executive magistrate, but he is totally destitute of executive power. He cannot pardon the slightest offense; he has no veto on legislation; and he cannot appoint a single officer in the state; all the executive powers are exercised by the legislature. So of its judicial powers. We have courts acting under standing laws; but one of those standing laws authorizes the legislature, upon a petition for a new trial, to set aside judgments at its pleasure. Originally, the legislature was the only court in the state; it exercised common law, chancery, probate, and admiralty jurisdiction. Its chancery jurisdiction it has never parted with. It is the best court of chancery in the world. Its probate power,

though conferred upon inferior courts, has always been exercised concurrently with them.''

We cite this excerpt to show how inapplicable the case of *Wilkinson* v. *Leland* is to a case arising under our Constitution. There was a case occurring where there was no Constitution, no separation of the legislative and judicial powers, no restraint upon legislation, except those which the court might assume were the necessary restrictions of a republican form of government. Here we have the Fourteenth Amendment prescribing that no state shall deprive any person of his property without due process of law. We have in our state Constitution a separation of the executive, legislative, and judicial power and a prohibition against officers of one of these departments exercising the power of any other. We have a constitutional provision giving to the County Court the powers incident to probate courts, and in addition to this we have general laws prescribing the procedure of these courts and specifying just what shall give them authority to divest the heir of an estate of his property in favor of the claims of creditors. If all these wise restrictions, which Rhode Island has now adopted, and which the national government has found necessary to supplement by the Fourteenth Amendment, are to be disregarded it would be just as well to repeal all restrictions upon encroachments on the right to hold and enjoy property.

Another case cited by Mr. Justice THAYER is *Watson* v. *Mercer,* 8 Pet. 88 (8 L. Ed. 876). This arose upon a Pennsylvania statute validating defective acknowledgments of deeds. It was claimed that such a statute divested antecedent vested rights and impaired the obligations of contracts. To this Mr. Justice STORY answered:

83 Or.—24

"As to the first point, it is clear, that this court has no right to pronounce an act of the state legislature void, as contrary to the Constitution of the United States, from the mere fact that it divests antecedent vested rights of property."

As to the second point he held that the act did not impair the obligations of a contract, as it certainly did not because it only confirmed what the parties had themselves attempted to accomplish. Statutes confirming voluntary contracts of this character which have been ineffectively executed stand upon an entirely different foundation from those in which judicial interposition is invoked to divest a person of his property against or without his consent, and it is concerning these the maxim quoted by Mr. Justice_ THAYER may well be invoked, "No man has a vested right to do wrong."

And here, since this expression has been adopted in the brief of defendants· in this case, we will digress from the topic under discussion to ask what wrong the heirs of deceased are doing, or have done, in this case? They come into court and say, "Our ancestor, Charles Fletcher, was the owner of the land in controversy," and it is proved beyond doubt. They say that the property was sold without notice to them, and this was substantiated. They say that the sale was void, and this is admitted. The court in a spirit of entire fairness and in accordance with the rule laid down in *Browne* v. *Coleman,* 62 Or. 454 (125 Pac. 278), while holding the sale and conveyance void, gave defendants a lien upon the property for every cent that had been paid for it at the sale and for all taxes which had been paid with legal interest thereon. In this state equity will never permit a purchaser at a void sale who has bought in good faith to lose the money

he has paid and which has gone to discharge claims
against the estate or for the protection of the property
after the sale.

Returning now to the discussion of the effect of
curative acts, it cannot be successfully controverted
that in this state the County Court sitting in probate
acts judicially: *Haile* v. *Hill,* 13 Mo. 612; *Wicks-Nease*
v. *James,* 31 Tex. Civ. App. 151 (72 S. W. 87); *Fitz-
simmons* v. *Johnson,* 90 Tenn. 416 (17 S. W. 100). It
is also settled that an administrator's sale of land by
order of the probate court when made to pay debts
of the estate is a judicial sale: *Maule* v. *Hellman,* 39
Neb. 322 (58 N. W. 112); *Mauney* v. *Pemberton,* 75
N. C. 219; *Noland* v. *Barrett,* 122 Mo. 181 (26 S. W.
692, 43 Am. St. Rep. 572). Starting out with the prop-
ositions that all probate powers are vested in the
County Court by the Constitution, that these powers
are judicial in their nature and cannot be exercised by
the legislature, that the proceeding to divest an heir
of his interest in the estate of his ancestor for the
payment of debts is statutory, that a failure to give
the notice required by statute renders the sale void,
we will inquire why such failure renders the sale in-
valid? The answer is, first, that where power to do
an act is given by the statute, the mode prescribed is
the measure of the power, and a failure to follow sub-
stantially the prescribed mode renders the proceeding
void for want of jurisdiction. Second, that notice to
the heir being required by law any attempt to divest
him of his title without such notice is an attempt to
take his property without due process of law. What
is "due process of law"?

" 'Due process of law' means a course of legal pro-
ceedings according to the rules and principles which
have been established in our system of jurisprudence

for the protection and enforcement of private rights'': *Pennoyer* v. *Neff*, 95 U. S. 714, 733 (24 L. Ed. 565).

"Due process of law cannot mean less than a prosecution or suit instituted and conducted according to the prescribed forms and solemnities for ascertaining guilt or determining the title to property'': *Taylor* v. *Porter*, 4 Hill (N. Y.), 140, 146 (40 Am. Dec. 274).

"By 'due process of law' is meant that which follows the general rule established in our system of jurisprudence for the security of private rights, is appropriate to the case and just to the parties affected. It must be pursued in the ordinary mode prescribed by the law. It must be adapted to the end to be attained, and, wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought'': *Hagar* v. *Reclamation Dist. etc.*, 111 U. S. 701 (28 L. Ed. 569, 4 Sup. Ct. Rep. 663).

See generally this title in Words and Phrases.

In the case at bar the heirs were not given an opportunity to be heard and the means provided for bringing them into court were not observed and the purchaser at the administrator's sale got no title. Then the legislature interferes, saying in effect:

"It is true that the statute was disregarded. It is true that the court did not proceed by due process of law and the title to the property is still in the heirs, but you thought you were getting a good title and you paid your money. Therefore, we will dispense with all these safeguards which have been erected for the protection of absent heirs and give you the property."

The legislature seems to have proceeded according to the adage of the old drunkard who said, "If getting drunk interferes with your business, cut out the business." So here, "If the requirement of due process of law interferes with your getting this property, we will cut out 'due process of law.'" The industry

and research of counsel for defendants have brought to our notice many cases sustaining curative statutes similar to the one now under consideration, and did space permit it would be a pleasure to discuss them. Some may be distinguished from the one under consideration, while others flatly sustain counsel's contention. It may be said that none of them go further than *Mitchell* v. *Campbell, supra,* and that we consider unsound and overrule.

We will now consider some of the cases holding an opposite view. In *McCulloch* v. *Estes,* 20 Or. 349 (25 Pac. 724), decided shortly after the case of *Mitchell* v. *Campbell,* Mr. Justice LORD says:

"The claim for the plaintiff is, that the sale by the guardian should have been in the county where the real property is situated, and that the sale was rendered void in not so making it. Assuming, without deciding that the contention for the plaintiff is correct, the case presented is that of a court having jurisdiction in the premises exercising it erroneously. In such case, after jurisdiction has attached, no principle of law is better settled than that mere defects or irregularities which may have resulted from the exercise of jurisdiction, cannot be taken advantage of in a collateral way, as is sought to be done in the present action. The defect was not of a jurisdictional character. Upon the fact presented the court was authorized to make the order for the sale of the property. This is conceded as well as the jurisdiction of the person, and the defect, if defect it be, crept in after jurisdiction was acquired. In a word, it is admitted that the record contains a recital of all the facts necessary to confer jurisdiction, and within the principle laid down in *Heatherly* v. *Hadley,* 4 Or. 1, it is conclusive when attacked collaterally. In *Walker* v. *Goldsmith,* 14 Or. 125 (12 Pac. 537), it was said: 'Where the question as to a guardian's sale of the lands of his ward arises collaterally, and the pleadings do not attack the proceedings for want of jurisdiction, and where the rec-

ord discloses on its face jurisdiction, both of the parties and of the subject matter, the sale must be sustained.' And in *Wright* v. *Edwards,* 10 Or. 307, it is said: 'Where there is matter of substance upon which jurisdiction can hinge, mere errors or defects, although material in some respects, but which might have been avoided on appeal, cannot avail to condemn a judicial proceeding when, by lapse of time, an appeal is barred, which has become the foundation of title to property.' "

After quoting the curative act of 1878 he continues:

"The case before us comes directly within the purview of this statute, which was intended to obviate or cure such defects or irregularities as is sought to be made available in this action. Where the defects are not jurisdictional in their character, it is held that they may be validated by a subsequent curative act of the legislature. Mr. Freeman says: 'But mere irregularities of proceeding, though of so grave a character as to render a judicial or executive sale inoperative, may be deprived of their evil consequences by subsequent legislation.' (Freeman, Void Jud. Sales, § 55.) So that, however we may regard this case, no error is discovered, and the judgment must be affirmed."

In *Fuller* v. *Hager,* 47 Or. 242 (83 Pac. 782, 114 Am. St. Rep. 916), Mr. Justice BEAN observes:

"It is a well-recognized rule of law that the legislature may, unless prohibited by the Constitution, validate or legalize, retrospectively, judicial or executive sales, even though the defects or irregularities therein are of so grave a character as to render them inoperative, so long as it does not undertake to infuse life into proceedings utterly void for want of jurisdiction: Freeman, Void Judicial Sales, 57; Endlich, Interp. Stat., § 291; *Wilkinson* v. *Leland,* 27 U. S. (2 Pet.) 627 (7 L. Ed. 542); *Sohier* v. *Massachusetts Gen. Hospital,* 3 Cush, 483; *Sanders* v. *Greenstreet,* 23 Kan. 425; *Smith* v. *Callaghan,* 66 Iowa, 552 (24 N. W. 50); *Boyce* v. *Sinclair,* 3 Bush (Ky.), 261."

In *Browne* v. *Coleman, supra,* this court said:

"It is claimed that the curative statute (Section 7156, L. O. L.) bars the right of defendants in this case, but such statute is limited in its operation to 'irregularities, defects, or informalities,' and it is evidently not intended to extend to sales which are absolutely void, and such has been the holding of this court."

In *Noon's Estate,* 49 Or. 286 (88 Pac. 673, 90 Pac. 673), we held that the widow and children of a decedent became seized of his real property immediately upon his decease and that their rights therein could not be affected by a subsequent act of the legislature attempting to subject their land to a liability not existing when they became invested with the legal title. In *McCartney* v. *Shipherd,* 60 Or. 133 (117 Pac. 814), we held that an act passed February 21, 1911 (Laws of 1911, p. 195), which attempted to validate appeals taken after the six months prescribed by statute had expired, was void because the statute was retroactive and interfered with vested rights obtained by judgment, and was an interference with the judicial power.

The large number of decisions in other jurisdictions render it impracticable to give a synopsis of all, but we refer to a few, most of which were cited by counsel for plaintiffs. In *McDaniel* v. *Correll,* 19 Ill. 226 (68 Am. Dec. 587), which arose upon a bill in chancery to set aside a will where there was no service of summons upon certain nonresident defendants and the legislature passed an act professing to validate the proceeding, it is said:

"If it was competent for the legislature to make a void proceeding valid, then it has been done in this case. Upon this question we cannot for a moment doubt or hesitate. They can no more impart a binding efficacy to a void proceeding than they can take

one man's property from him and give it to another. Indeed, to do the one is to accomplish the other."

The opinion of Mr. Justice McKinstry, in *Pryor* v. *Downey,* 50 Cal. 388 (19 Am. Rep. 656), is an instructive one upon this subject, and many of the decisions are cited and commented upon. To quote from it would be to mutilate it, but it meets every contention of defendants upon this branch of the case, and in the opinion of the writer shows conclusively that an attempt by the legislature to infuse life and vitality into a void proceeding of this character is wholly beyond its constitutional powers. We, therefore, adhere to the doctrine announced in *McCulloch* v. *Estes, Fuller* v. *Hager,* and *Browne* v. *Coleman, supra,* to the extent of holding that where there is a complete lack of jurisdiction by reason of want of service of citation upon the heirs or persons interested, the legislature cannot by a subsequent curative act pass the title to a purchaser at an administrator's sale.

Much sympathy seems to be expended in many of the opinions upon the injury done to "innocent purchasers" by declaring these sales invalid, but it would seem that innocent and nonresident heirs ought to be entitled to some consideration. The method pointed out by statute for obtaining jurisdiction to make an administrator's sale is very simple and easily complied with, and, as every step is required to be made a matter of record, it is not a difficult or expensive matter for the intending purchaser to have that record examined so as to ascertain whether the sale will pass title to the property. If he negligently fails to do this, or having done it takes the chances that no possible heir will turn up to assert a claim to the property, he has only his own negligence to blame if he loses the benefit of his purchase.

9, 10. It is claimed that Section 7156, L. O. L., operates as a statute of limitations against the heirs, and that not having brought suit to set aside the administrator's sale within five years from the date thereof, they are barred from their remedy. It is conceded that the land is wild land not in the actual possession of anyone. The constructive possession must, therefore, be in the person holding the legal title. In *Martin* v. *White,* 53 Or. 319 (100 Pac. 290), this court held than when a tax proceeding was void and the tax sale purchaser not in possession, it is beyond the power of the legislature to transfer to the purchaser the title of the owner by lapse of time alone. The reasoning in that case and in the authorities there cited must resolve this proposition against the contention of the defendants here.

11, 12. There is a cross-appeal by the plaintiffs from that part of the decree which adjudged that Mrs. Maggie Fletcher, now Young, was the lawful wife of Charles W. Fletcher and entitled to dower in the lands in controversy, which dower right had been assigned to defendants. Conceding for the purposes of this case that plaintiffs had a right to attack the legality of the divorce proceedings, we are not prepared to hold they were void. The complaint in the divorce proceeding states all the necessary jurisdictional facts as to residence and a good cause of suit, and is apparently verified by Fletcher before a Wisconsin officer, as is an affidavit filed in the course of the proceedings; and the proceedings are regular upon their face. It is attempted to be shown that he was not in the state of Wisconsin at the time, but was a resident of Coos County, Oregon. The whole evidence in the case indicates that Fletcher was a saw-filer by trade, that his residence for years was at or about Sheboygan, Wis-

consin, although he worked in mills in Michigan and Minnesota, and that he came to Coos County about 1875. Whether he came originally merely in pursuit of employment, intending to return to Wisconsin and considering that state his home, does not appear. The evidence of two witnesses, one of whom puts his first coming here ten years before the actual date, is to the effect that they knew him well, were intimate with him, and do not recollect of his ever going back to Wisconsin after he came out here. Nearly forty years had passed since these witnesses first became acquainted with deceased, and we are not prepared to find that he committed bigamy upon the statement of aged witnesses who, after the lapse of many years, are only able to testify that they do not remember the fact of his absence from Coos County and as to their impression that if he had been absent they would have remembered it. When the lips that could have spoken are sealed in death, we do not feel that plaintiffs have produced sufficient evidence to overcome the presumption of regularity which appears upon the face of the decree, as well as that other presumption that a person is to be presumed innocent of crime or wrong until that presumption is overcome by evidence.

13. The decree of the Circuit Court will be in all things affirmed, and, as both parties have appealed and both have failed in their appeal, neither party will recover costs in this court.          Affirmed.

Mr. Chief Justice Moore, Mr. Justice Bean and Mr. Justice Harris concur.

Mr. Justice Eakin taking no part in the consideration of this case.

Former opinion reversed, decree below reversed and suit dismissed
January 30, 1917.

ON REHEARING.

(163 Pac. 585.)

In Banc.    Statement by MR. JUSTICE MOORE.

This is a collateral attack upon the validity of a probate order licensing the sale of real property of a decedent's estate to pay the debts thereof. The material facts are that Charles W. Fletcher, an inhabitant of Coos County, Oregon, died intestate therein January 27, 1897, seised and possessed of real and personal property in that county. He left surviving Maggie E. Fletcher, as his widow, and Minnie E. Stadelman, a daughter, and Henry H. Fletcher, a son by a former wife from whom as it appears from a certified copy of a decree of a court of another state, which was received in evidence, he was divorced. The County Court of Coos County, Oregon, upon Maggie E. Fletcher's verified petition, which set forth the facts necessary to give the court jurisdiction, detailed the property of the estate and estimated the worth thereof, stated the deceased left no will, and gave the names and ages of his heirs and her own residence, but alleged that the residence of the daughter and son named was unknown, appointed as administrator John F. Hall, a citizen and resident of that county, who duly qualified for the trust and entered upon a discharge of his duties. He published notice to creditors and caused to be made and filed an inventory and appraisement of all the property of the estate. In administering thereon the proceeds of the sale of personal property thereof were exhausted, leaving charges, expenses, and claims not all satisfied, whereupon the administrator

applied to the County Court for an order of sale of the real property, or so much thereof as might be necessary to discharge such obligations. His petition therefor stated that all the personal property had been disposed of by order of that court, minutely detailed the charges, expenses, and claims remaining unsatisfied, as far as could be ascertained, amounting to $512.98, gave a description of the real property and the value of the different portions or lots and the conditions thereof, alleged that there were no liens thereon except the taxes, gave the names and ages of the heirs and the residence of Maggie E. Fletcher, but alleged that the residence of the daughter and son named was unknown, stating what effort had been made to ascertain where they resided, and averred that it was the belief of the administrator that Maggie E. Fletcher, then Mrs. Young, was the only surviving heir.

The County Court on June 6, 1902, made findings of fact substantially as set forth in the petition and ordered that a citation be issued to the heirs and all other persons interested in the estate to appear before that court at the courthouse on July 14, 1902, which was at a day of a regular term of that court, and show cause, if any they had, why an order should not be granted the administrator to sell so much of the real property of the estate, particularly described in the petition, as might be necessary to pay the debts and expenses mentioned; and that such citation be served upon the decedent's daughter and son, whose residence was found to be unknown, by publication for four weeks in the "Coos Bay News," a weekly newspaper published in that county, requiring such heirs and all other persons interested in the estate to appear at the time and place so specified and show cause, if any existed, why the order prayed for should not be

granted. The sheriff's return shows that the citation was personally served upon Maggie E. Fletcher. The affidavit of the printer of the "Coos Bay News" states that the citation, a copy of which is attached to the sworn declaration, was published in the regular issues of that newspaper once a week for five successive issues; the first appearing June 17, 1902, and the last on July 15th of that year. Predicated on such proof the County Court on July 17, 1902, found that it was necessary to sell, with other land, the following described real property: The southwest quarter of the northeast quarter, the north half of the northeast quarter, and the northwest quarter of the southeast quarter of section 21, township 26 south, range 11 west of the Willamette Meridian, to pay the debts of the estate and the expenses of the administration. The court further found that the citation had been duly served; that the time for filing objections to the petition for the sale of land had expired, and that no person had appeared or filed objections to the granting of the license prayed for, whereupon it was ordered that the administrator be and he was authorized to sell the real property particularly described or so much thereof as might be necessary to pay the debts and expenses of the estate; that such land be disposed of at private sale to the highest bidder, one half of the purchase price to be paid in cash on the day of sale, and the remainder to be evidenced by a promissory note payable in a year with legal interest and secured by a mortgage of the premises. Founded on such license the administrator duly advertised the sale of such land as provided by law and received only one bid therefor, that of August Nelson of $640, which sum was also to be in payment of Maggie E. Fletcher's

dower right. The offer was accepted, and upon the administrator's report the County Court on February 3, 1903, duly confirmed the sale, whereupon the administrator's deed and a conveyance of the dower right were executed to the purchaser.

Thereafter this suit was instituted by Mrs. Stadelman, her brother, and J. W. Motley, to whom an undivided one half of the land had been conveyed, against W. H. Miner and Charles Worden, who had succeeded to all the interest of August Nelson in the real property hereinbefore described, to quiet the title thereto. The cause being at issue was tried, and from the evidence received findings of fact and of law were made; and based thereon a decree was given for the relief prayed for in the complaint, but the defendants were awarded $640, the purchase price of the land, and interest thereon from January 21, 1903, and the further sum of $302.54, which they had paid as taxes imposed on the premises. The court found that Maggie E. Young, as the widow of deceased, had an unassigned dower right in the land, which annuity at her age was equal to four per cent of the present value of the premises, and further decreed that the real property be sold and from the proceeds arising therefrom that there be paid the sum so awarded, and if any money then remained it should be paid over to the plaintiffs. From this decree the plaintiffs and the defendants separately appeal.              FORMER OPINION REVERSED.
                                    DECREE BELOW REVERSED.
                                    SUIT DISMISSED.

*Mr. Guy C. H. Corliss,* for the appellants.

*Mr. Harry G. Hoy,* for the respondents.

MR. JUSTICE MOORE delivered the opinion of the court.

At a former hearing of this cause it was practically conceded that the administrator's deed was void on the ground that the order licensing the sale of the land was prematurely granted, but it was contended that the curative acts of 1907 (Section 7156, L. O. L.) and 1913 (Gen. Laws Or. 1913, c. 363, Section 3) remedied the infirmity. It was ruled, however, that these remedial statutes could not infuse life into any proceedings that never had vitality: *Stadelman* v. *Miner, ante,* p. 348 (155 Pac. 708). A rehearing herein having been granted, it was maintained thereat by defendants' counsel that, though the license to sell the land was granted too soon, the citation had been duly served upon the heirs by publication for the required time, and that such order of sale was not void, and, therefore, not vulnerable to collateral attack. The statute regulating the procedure in cases like that under consideration reads:

"Upon the filing of the petition a citation shall issue to the devisees and heirs therein mentioned, and to all others unknown, if any such there be, to appear at a term of court therein mentioned, not less than ten days after the service of such citation, to show cause, if any exist, why an order of sale should not be made as in the petition prayed for." Section 1254, L. O. L.

"Upon an heir or devisee unknown or nonresident, it may be served by publication in a newspaper published in the county chosen by the administrator or executor not less than four weeks." Section 1255, L. O. L.

14. The four weeks and ten days thus limited means 38 days to be computed by excluding the first day of publication of the citation and including the day upon

which the order of sale of the land is made: *O'Hara*
v. *Parker,* 27 Or. 156 (39 Pac. 1004; *Horn* v. *United
States Mining Co.,* 47 Or. 124 (81 Pac. 1009). Omit-
ting June 17, 1902, the day of the first publication, it
will be seen that the time specified expired July 24th
of .that year. The license having been granted July
17, 1902, the order was made a week too soon. The
service of the citation, though constructively made,
was as completely performed July 14, 1902, the expira-
tion of the four weeks specified in the order, as if the
service had been personally made by a proper officer
upon Mrs. Stadelman and her brother: Section 1254,
L. O. L. From that time the County Court was
deemed to have acquired jurisdiction and to have had
control of all the subsequent proceedings: Section 63,
L. O. L.

The service of the citation having been completed
does the order of sale which was thereafter prema-
turely made render the subsequent proceedings void
or voidable? If the latter only, though the license
which was granted might have been set aside on a di-
rect attack, it was unassailable in any other manner.
Thus in *Woodward* v. *Baker,* 10 Or. 491, it was decided
that when a defendant had been personally served
with a summons and a copy of the complaint, a judg-
ment thereafter prematurely rendered against him,
as for want of an answer, was voidable only and not
subservient to collateral attack. In *Altman* v. *School
District,* 35 Or. 85, 88 (56 Pac. 291, 292), Mr. Justice
Bean in speaking of the defendant *quasi* corporation
says:

"The fact that it was not given all the time allowed
by law after the service of the summons in which to
plead will not vitiate the judgment or make it subject
to collateral attack."

In *Murray* v. *Purdy,* 66 Mo. 606, it was ruled that an approval of an administrator's sale when made at a term prior to that prescribed by law was not void but voidable only, criticising earlier decisions of that court to the contrary. In *Sims* v. *Gray,* 66 Mo. 613, it was held that an administrator's deed was not void by reason of the fact that the sale was reported to and approved by the court at the same term at which it was made instead of at a subsequent term as required by law. In deciding that case Mr. Justice HOUGH remarks:

"When the petition for the sale of the real estate was filed and publication was made, notifying all persons interested in the estate that, on a day named, an order for the sale thereof would be made, unless cause to the contrary should be shown, the heirs were in court; and no other or further notice was required, by law, to be given to them of any subsequent proceedings in the case. The court was a court of record, having complete jurisdiction of the subject-matter of the proceeding, and while such jurisdiction must be exercised according to law, yet if the court exceeds its powers under the law, and disregards the statutory requirements established for its guidance, its acts may be irregular or erroneous, but they will not be void. *Johnson* v. *Beazley,* 65 Mo. 250 [27 Am. Rep. 276]. A judgment rendered after notice, but sooner than it should have been rendered according to the rules of law, or the practice of the court, is simply an irregular judgment and may be set aside on motion, in any court of record, at a subsequent term."

To the same effect see also *Wilkerson* v. *Allen,* 67 Mo. 502; *Snyder* v. *Markel,* 8 Watts (Pa.), 416. In *Woodward* v. *Baker,* 10 Or. 491, it will be remembered the premature judgment there rendered was based upon the personal service of a summons and a complaint. In *Moore Realty Co.* v. *Carr,* 61 Or. 34, 39

(120 Pac. 742, 744), it was determined, however, that a defect in the service of a summons by publication did not render the judgment founded thereon void. In deciding that case Mr. Chief Justice EAKIN, speaking for the court, says:

"The rule seems to be that, if there is actually some notice to the defendant, it is sufficient on a collateral attack, and the irregularity or defect in the service or lack of compliance with the statute does not render the judgment void, but merely voidable."

The rule thus stated is abundantly sustained by authority: *Clay* v. *Bilby,* 1 Ann. Cas. 917. In a note to that case at page 923 it is said:

"The same principles are applicable in cases where the service is by publication. If there is actually some notice, an irregularity in the publication does not necessarily render the judgment void and cannot be taken advantage of collaterally"—citing many cases.

15, 16. When a defendant in a civil action is personally served with a summons and a complaint whereby he is notified to appear and answer at a time and place specified, if a judgment be prematurely rendered against him, he can have the irregularity corrected by appearing on the return day and interposing a motion for that purpose. If he do not thus move in the matter and offer no valid excuse for his delay, it should be taken for granted that he had no sufficient defense and for that reason is justly bound by the final determination which though voidable cannot be collaterally assailed. So too when complete service by publication is made of process, and before the return day thus specified the relief sought is granted, the party affected thereby may at any time within a year from the entry of the judgment, when rendered

upon such service, be allowed to defend on such terms
as may be just: Section 59, L. O. L.   If he do not
within the time thus limited move to set aside such
irregular judgment, it should be treated as voidable
only and not vulnerable to collateral attack.   In the
case of service of process by publication if the party
to be affected thereby never receives the notice de-
signed to be imparted, he cannot be expected to appear
at the place designated on the specified return day;
but as the statute allows him a year after the entry
of the judgment in which to apply for leave to defend
the suit or action, and grants to the party who is per-
sonally served only the day appointed, such difference
in time should be treated as ample compensation for
the dissimilarity in the mode of service.   With an
exercise by counsel for a moving party of all the care
that can reasonably be bestowed, it frequently happens
that the parties intended to be affected by the service
of process by publication never obtain any knowledge
thereof until more than a year after the judgment or
decree has been rendered against them, and then too
late to apply for leave to set the final determination
aside and to interpose a defense.   Notwithstanding
such possible results the court secures jurisdiction of
the person by the publication of the process for the
prescribed period, and because the judgment may be
rendered against the party after such service is com-
pleted but prior to the return day, which extension is
allowed by law and intended to be sufficient to enable
the party so served to make the journey by ordinary
means of travel from his residence to the place of
trial at the appointed time, the final determination so
rendered in the case supposed ought not to be re-
garded as void, but voidable only.   In such case if the
party intended to be served by publication of the pro-

cess had no knowledge thereof, he could not have appeared at the time and place designated; and this being so the premature rendition of the judgment could not have seriously prejudiced him.

17. It is not charged that the administrator was guilty of fraud in the publication of the citation, or that he did not exhaust every reasonable source of information to ascertain the residence of the decedent's daughter and son so as to mail to them copies of the citation. Under such circumstances, though the order of the County Court licensing the sale of the land to pay the debts of the estate was prematurely granted, such final determination is not void, but voidable only; and this being so its validity cannot be collaterally challenged.

The deduction thus made renders it unnecessary to consider any other question involved. The decree is, therefore, in all respects reversed and the suit dismissed, a conclusion which would have been reached at the former trial if the argument last adduced had then been made.

FORMER OPINION AND DECREE BELOW REVERSED.

SUIT DISMISSED. APPROVED ON SECOND REHEARING.

---

Opinion on First Rehearing Approved.

SECOND PETITION FOR REHEARING.

(163 Pac. 983.)

On second petition for rehearing, the opinion on first rehearing, reversing former opinion and the decree of the court below approved.

*Mr. Harry G. Hoy,* for the petition.

*Mr. Guy C. H. Corliss, contra.*

In Banc.   MR. JUSTICE MOORE delivered the opinion of the court.

18. It is contended in a petition for rehearing that in reversing the decree herein errors were committed: (1) In holding this suit to be a collateral attack; (2) in concluding a County Court while transacting probate business is a tribunal of general and superior jurisdiction; and (3) in determining the citation issued by that court was valid. This suit was brought to quiet the title to real property, which right of ownership and possession was alleged to have been disturbed by the execution of an administrator's deed. It is argued by plaintiff's counsel that though bills of review have been abolished in Oregon (Section 390, L. O. L.), the form only of the procedure has been changed, while the relief anciently granted by a suit to review, correct, or reverse a decree remains; and this being so this suit is a direct attack to impeach and set aside an order of the County Court whereby it attempted illegally to deprive the plaintiffs of their land. That a suit in equity may be maintained in this state to set aside the final judicial determination reached in another cause is settled by repeated adjudications: *Crews* v. *Richards,* 14 Or. 442 (13 Pac. 67); *Friese* v. *Hummel,* 26 Or. 145 (37 Pac. 458, 46 Am. St. Rep. 610); *Campbell* v. *Snyder,* 27 Or. 249 (41 Pac. 659); *Nessley* v. *Ladd,* 30 Or. 564 (48 Pac. 420); *Hilts* v. *Ladd,* 35 Or. 237 (58 Pac. 32); *McLeod* v. *Lloyd,* 45 Or. 67 (75 Pac. 702); *Smith* v. *Nelson,* 46 Or. 1 (78 Pac. 740); *Livesley* v. *Johnson,* 48 Or. 40 (84 Pac. 1044). Such suit, however, is not necessarily a direct attack, though it was so held in *Heatherly* v. *Hadley,* 4 Or. 1.

In *Morrill* v. *Morrill,* 20 Or. 96, 101 (25 Pac. 362, 23 Am. St. Rep. 95, 11 L. R. A. 155), in a suit to set aside a decree of partition it was said:

"This is undoubtedly a collateral attack. It is an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling, correcting, or modifying the decree."

In referring to the language so quoted a noted author remarks:

"This definition assumes that a proceeding to annul or enjoin is always direct. It is direct only when pursued in the time and manner provided by law against one who is not a *bona fide purchaser*": Van Fleet, Col. At., § 3.

Though the doctrine announced in *Heatherly* v. *Hadley, supra,* has not been overruled, it has never been followed. In a note to the case of *Morrill* v. *Morrill, supra* (23 Am. St. Rep. 95, 103), it is said:

"All irregularities in the exercise of a court of general jurisdiction are cured by final judgment, and it cannot be collaterally attacked."

In another note to that case (11 L. R. A. 155) it is observed:

"Judgments cannot be collaterally assailed for mere errors or irregularities. They can be assailed only when void, or when rendered without jurisdiction."

Adopting the views thus expressed it is settled in this state the suit at bar is a collateral attack upon an order of a County Court directing a sale of land belonging to the estate of a decedent to pay the debts thereof: *Finley* v. *Houser,* 22 Or. 562 (30 Pac. 494); *Belle* v. *Brown,* 37 Or. 588 (61 Pac. 1024); *Saylor* v. *Banking Co.,* 38 Or. 204 (62 Pac. 652); *Meinert* v. *Harder,* 39 Or. 609 (65 Pac. 1056); *Smith* v. *Whiting,* 55 Or. 393 (106 Pac. 791); *Mansfield* v. *Hill,* 56 Or. 400

(107 Pac. 471, 108 Pac. 1007); *Harpold* v. *Arant,* 64 Or. 376 (130 Pac. 737; *Purdy* v. *Winter's Estate,* 79 Or. 614 (156 Pac. 285); *Johnstone* v. *Chapman Timber Co.,* 79 Or. 674 (156 Pac. 286).

It is insisted by plaintiffs' counsel that Section 9 of Article VII of the Constitution of Oregon, expressly declaring County Courts to be inferior tribunals and subject to the appellate jurisdiction and control of the Circuit Courts, governs the determination of this cause. In support of the assertion thus made attention is called to the case of *Garnsey* v. *County Court,* 33 Or. 201 (54 Pac. 539, 1089), and *Farrow* v. *Nevin,* 44 Or. 496 (75 Pac. 711), which were writs of review, or *certiorari,* to annul allowances made by County Courts of claims against estates of decedents. In the first case the writ was treated as a collateral attack, while in the second it was considered to be direct. The attack in each instance, though assailing an order of the County Court made in the transaction of probate business, was certainly direct because the writs of review, which in such cases are concurrent with the right of appeal were sued out in the time and manner limited by the statute to correct judicial errors apparent on the face of the record: Section 605, L. O. L.; Van Fleet, Col. At., Section 3; *Malone* v. *Cornelius,* 34 Or. 192 (55 Pac. 536); *Title Abstract Co.* v. *Nasburg,* 58 Or. 190 (113 Pac. 2). In *Garnsey* v. *County Court, supra,* it was held that a County Court, sitting for the transaction of probate business, was an inferior tribunal, citing as sustaining that conclusion the case of *Kirkwood* v. *Washington County,* 32 Or. 568, 571 (52 Pac. 568), which was a writ of review challenging an order relating to the collection of taxes, a matter pertaining wholly to county business. If an inferior court as there defined is one from which an

appeal will lie, it necessarily follows that Circuit
Courts in Oregon are judicial tribunals of that class,
for their judgments and decrees are reviewable on
appeal; but such courts are conceded to be general
and superior, and hence the definition so given is in-
applicable. The conclusion reached in *Garnsey* v.
*County Court, supra,* and in *Farrow* v. *Nevin, supra,*
so far as they in effect relate to collateral attacks, are
diametrically opposite, thus demonstrating that both
cannot be correct expressions of the law. It may well
be doubted if either decision is proper on the ground
that a writ of review will not lie from the action of a
County Court in probate matters, for to admit that a
precept of that kind is available in such cases is to con-
cede that the County Court while transacting business
pertaining to the settlement of a decedent's estate is
an inferior tribunal, a conclusion which is at variance
with every other decision rendered by this court on
that subject.

In the transaction of county business the county
judge usually sits with the county commissioners,
which officers when thus assembled at the time and
place appointed by law, though exercising adminis-
trative and executive duties concerning the financial
affairs of the county, its police powers, and its cor-
porate business, are not designated as the board of
county commissioners, but are called the County
Court: Article VII, Section 12 of the Constitution
Section 937, L. O. L. When the county commissioners
and the county judge are sitting thus for the transac-
tion of county business, such County Court is an in-
ferior tribunal: Article VII, Section 9, of the Consti-
tution: *Thompson* v. *Multnomah County,* 2 Or. 34, 40;
*Johns* v. *Marion County,* 4 Or. 46, 49; *State* v. *Officer,*
4 Or. 180, 183; *Bewley* v. *Graves,* 17 Or. 274, 282 (20

Pac. 322); *State* v. *Myers,* 20 Or. 442, 444 (26 Pac. 307); *Cameron* v. *Wasco County,* 27 Or. 318, 321 (41 Pac. 160); *Grady* v. *Dundon,* 30 Or. 333, 336 (47 Pac. 915); *Kirkwood* v. *Washington County,* 32 Or. 568 (52 Pac. 568); *Munroe* v. *Thomas,* 35 Or. 174, 175 (57 Pac. 419).

Section 1 of Article VII of the organic law of the state, as far as important herein, reads:

"The judicial power of the state shall be vested in a supreme court, circuit courts, and county courts, which shall be courts of record, having general jurisdiction, to be defined, limited, and regulated by law, in accordance with this constitution."

This clause was amended by an exercise of the initiative power at a general election held November 8, 1910: Laws 1911, p. 7. The changes thus authorized, however, have never been made. The County Court has been given exclusive original jurisdiction in all probate matters: Section 936, L. O. L. In construing these provisions together it has uniformly been held that a County Court in the transaction of probate business is a tribunal of general and superior jurisdiction, and its orders in such cases are not subject to collateral attack: *Russel* v. *Lewis,* 3 Or. 380; *Tustin* v. *Gaunt,* 4 Or. 305; *Monastes* v. *Catlin,* 6 Or. 119; *Bewley* v. *Graves,* 17 Or. 274 (20 Pac. 322); *Richardson's Guardianship,* 39 Or. 246 (64 Pac. 390); *Slate's Estate,* 40 Or. 349 (68 Pac. 399); *Smith* v. *Whiting,* 55 Or. 393 (106 Pac. 791); *Hillman* v. *Young,* 64 Or. 73 (127 Pac. 793, 129 Pac. 124); *Yeaton* v. *Barnhart,* 78 Or. 249 (150 Pac. 742, 152 Pac. 1192). To the same effect, see *Clark* v. *Rossier,* 10 Idaho, 348 (78 Pac. 358, 3 Ann. Cas. 231); *In re Creighton,* 91 Neb. 654 (136 N. W. 1001, Ann. Cas. 1913D, 128); *Kavanagh* v. *Hamilton,* 53 Colo. 157 (125 Pac. 512, Ann. Cas. 1914B, 76).

The statute referring to the application of an administrator or executor for an order to sell real property belonging to the estate of a decedent, to discharge the debts thereof, reads:

"Upon the filing of the petition a citation shall issue to the devisees and heirs therein mentioned, and to all others unknown, if any such there be, to appear at a term of court therein mentioned, not less than ten days after the service of such citation, to show cause if any exist, why an order of sale should not be made as in the petition prayed for": Section 1254, L. O. L.

The citation put forth and complained of in this suit was served by publication for the required time, informed Henry Fletcher, his sister, and all others interested in the estate of Charles W. Fletcher, deceased, that the administrator thereof had filed in the County Court his verified petition for an order to sell the real property of the estate or so much thereof as might be necessary to pay the claims and expenses against the estate, particularly describing the land, and notified such parties that the County Court had made an order directing a citation to be issued to them requiring them to appear at a time and place as hereinafter designated—

"to show cause if any exists, why the prayer of the administrator should not be granted. Now, therefore, in pursuance of said order of said court, you and each of you are hereby notified that you are required to appear at the county courtroom in the courthouse, at Coquille City, Coos Co., Oregon, on Wednesday, the 16th day of July, 1902, to show cause, if any exists, why the order of sale, as in said petition prayed for [   ] of the above described premises, or a sufficient portion thereof to pay the indebtedness against said estate and the expenses of administration thereof."

The citation also stated that service thereof was made by publication pursuant to the County Court's order of June 6, 1902, was signed by the county clerk three days thereafter, and sealed with his official seal. An examination of this citation will show that in the space indicated by brackets the phrase "should not be made for the sale," or other words of equivalent import, were omitted. When, however, that notice is considered in its entirety, no doubt can possibly exist in respect to the purpose for which the heirs of Charles W. Fletcher were required to appear in the County Court, and probably for that reason their counsel takes no exception to such omission. Objec- tion is made to the failure of the citation to state that the time in which such parties were required to appear was at a term of the County Court provided by Sec- tion 1254, L. O. L., and it is contended that by reason thereof the process was void on its face. Some of the cases cited as sustaining such view will be examined. In *Hunsaker* v. *Coffin*, 2 Or. 107, the summons served upon the defendant required him to appear and answer the complaint "forthwith," when under the law then in force a summons was made returnable on the first day of the next term of court. The defendant in that action having failed to appear as notified, a default judgment was rendered against him on the next day after such service was made. Several years there- after application was made for leave to issue execution on the judgment in order to prevent the statute of limitations from running against it, and the cause hav- ing reached this court it was held that such judgment was void. In that case the law having fixed a partic- ular day for the return of the process, thereby pre- scribed the time for holding the court and not the time the court sat for transacting business: 11 Cyc. 726;

*Gird* v. *State,* 1 Or. 308.   In the case at bar the statute makes a citation returnable at a term of the County Court, and not at a particular day thereof as in the case relied upon.   In that case, however, under the rule now generally prevailing the judgment there rendered would not be regarded void, and thus vulnerable to collateral attack, because the summons having been personally served upon that defendant, who was presumed to know the law prescribing the return day, he should have specially appeared on the first day of the next term and moved to set aside the judgment.

The case of *Northcut* v. *Lemery,* 8 Or. 316, was a collateral attack upon a decree of divorce pursuant to which the plaintiff by mesne conveyances obtained a deed of a tract of land.   There was no evidence of the service of a summons upon the defendant in the divorce suit, other than a recital in the decree rendered therein as follows:

"And it further appearing that defendant had been served by publication as required by law."

The statute then in force applicable to such cases required the service of a summons when made upon a nonresident to be published four weeks.   The period thus limited could not possibly have elapsed when the divorce was granted, and it was held by this court that jurisdiction of the person of the defendant in that suit had never been secured.   The facts there stated are not applicable to the case at bar, for here the citation was published for the required time before the order for the sale of the land was made by the County Court.

In *Wright* v. *Edwards,* 10 Or. 298, which was a collateral attack upon the order of a County Court directing the sale of the realty of a decedent's estate to pay the debts thereof, it was held that the application upon

which the order was predicated did not state facts sufficient to invoke an exercise of jurisdiction of the court so as to authorize it to grant the prayer of the petition, and for that reason the order was determined to be void. In the case at bar the petition was adequate for that purpose.

In *White* v. *Johnson,* 27 Or. 282 (40 Pac. 511, 50 Am. St. Rep. 726), the defendant died after that action was commenced, but before the summons was served, whereupon the cause was continued, by order of court, against Cordelia Johnson, the decedent's executrix, who was allowed ten days in which to answer the complaint. The title of the cause was not changed by making her a party, and in the absence thereof the original summons, and copies of the complaint and of the order continuing the cause were personally served upon her. She appeared specially in the trial court for that purpose only, and moved to set aside the attempted service of process. The motion was denied, and, the executrix declining to plead, judgment was rendered in favor of the plaintiff for the sum demanded in the complaint, and she appealed. In reversing the judgment it was held that as the statute required a summons to contain the names of the parties to the action and the title thereof and to be directed to the defendant, such service did not give the court jurisdiction to render a judgment by default against the administratrix in her representative capacity. It will thus be seen that the question presented to this court was raised by an appeal which was a direct attack upon the judgment.

In *Smith* v. *Whiting,* 55 Or. 393 (106 Pac. 791), which was a collateral attack upon the validity of a probate order directing the sale of real property belonging to a decedent's estate, it appeared that the

citation addressed to the parties interested therein was served by publication notwithstanding some of them resided in Oregon, as to whom it was held that the order to sell the land was void. In that case there was no service whatever as to the parties residing in this state, a fact which will be hereinafter mentioned.

In *Sanders* v. *Rains,* 10 Mo. 478, it was ruled that a summons issued by a justice of the peace and made returnable in a time less than that allowed by law was void, that a judgment by default rendered on the service of such summons was also void, and that the party acquired no title under a sale on an execution issued upon such judgment, which final determination was subject to collateral attack on the ground that it was void. The judgment there complained of was given by a court of inferior jurisdiction, and has no application to the case at bar.

In *Thompson* v. *Patterson,* 2 Miles (Pa.), 146, a summons issued out of the District Court of Philadelphia, and made returnable at a day not authorized by law, was held bad and quashed upon a motion interposed in that court in proper time. That was certainly a direct attack.

In *Crowell* v. *Galloway,* 3 Neb. 215, under a statute which directed that a summons should be returnable on the second Monday after its date, it was held that if such process were made returnable at any other time it was void, and no jurisdiction of the defendant was secured, but that, if such party intended to rely upon the want of power to hear and determine the cause, he should have appeared specially for that purpose only, but by his general appearance he acknowledged jurisdiction, and the judgment so rendered against him was affirmed on appeal. It will thus be seen that the

attack was not collateral, and the decision rendered on appeal is not in point here.

In *State* v. *Parks,* 34 Okl. 335 (126 Pac. 242), it was decided that a summons issued March 6th and returnable in ten days, but which process required the defendant to appear and answer March 26th, should have been quashed on motion. That was a direct attack; and had a motion of that kind been interposed in the County Court of Coos County, Oregon, within the time prescribed by law, the order of sale of the land might have been set aside in consequence of irregularities in the citation which was published.

In *North Pacific Cycle Co.* v. *Thomas,* 26 Or. 381, 383 (38 Pac. 307, 46 Am. St. Rep. 636), Mr. Chief Justice BEAN, in speaking of the service of process, says:

"There is an important difference between a want of jurisdiction and a mere defect in obtaining it. In the former case the judgment is absolutely void, and may be impeached whenever it is sought to be used as a valid judgment; but in the latter case it is simply erroneous and voidable, and can be attacked only in some direct proceeding authorized by law. When there is some irregularity in the form of the process, or in the manner of its service, the party served can take advantage thereof by some appropriate proceedings in the court where the action is pending, and by neglecting to do so he waives the irregularity and cannot attack the judgment in a collateral proceeding."

In *Moore Realty Co.* v. *Carr,* 61 Or. 34, 39 (120 Pac. 742, 744), Mr. Chief Justice EAKIN, in discussing the service of process by publication, says:

"The rule seems to be that, if there is actually some notice to the defendant, it is sufficient on a collateral attack, and the irregularity or defect in the service or lack of compliance with the statute does not render the judgment void, but merely voidable. The following cases are all collateral attacks upon judgments or

decrees rendered on service for (by) publication, and it was held in each that, although the service was defective or irregular, it did not render the judgment void, and was sufficient against a collateral attack''— citing many cases.

In commenting upon the same legal principle, in *Quarl* v. *Abbett,* 102 Ind. 233, 240 (52 Am. Rep. 662), Mr. Justice Elliott, a noted author and distinguished jurist, observes:

"Where there is some notice, although defective, the judgment is not void; if there is notice, although irregular and defective, there is jurisdiction (citing authorities). The rule with respect to notice by publication is the same as to notice by service of summons; there is, indeed, reason for being more liberal in cases of constructive notice than in cases where the service is by summons, for the defendant in the former class of cases is entitled, as of right, to open the judgment and try the cause. It is a mistake to suppose the notice of publication is purely of statutory origin, for it was well known in chancery and at common law: 3 Bl. Com. 283, 244; *Hahn* v. *Kelly,* 34 Cal. 391 (94 Am. Dec. 742). There is therefore no valid reason why the same presumption should not obtain in cases where the notice is by publication as where it is by service of summons, and the weight of authority is to that effect"—citing cases.

In *Wilson* v. *Wilson,* 255 Mo. 528 (164 S. W. 561), in applying for authority to sell real property belonging to a decedent's estate the process published required the persons named therein to appear ''before'' instead of ''at'' the day fixed in the order, and it was held that the mistake was a harmless irregularity.

By the citation which was published in the case at bar for the required time Henry Fletcher and his sister were informed when and where they were required to appear, and the time so designated was at a day of the

regular term of the County Court.   Under the rule announced in *North Pacific Cycle Co.* v. *Thomas, supra,* and followed in *Perry* v. *Gholson,* 39 Or. 438 (65 Pac. 601, 87 Am. St. Rep. 685), and in *Stanley* v. *Rachofsky,* 50 Or. 472 (93 Pac. 354), though the citation was irregular in the respects mentioned the order based thereon is not void, and for that reason we adhere to the opinion reversing the decree.

OPINION ON FIRST REHEARING APPROVED.

MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur in the result.

MR. JUSTICE MCCAMANT took no part in the consideration hereof.

MR. JUSTICE BURNETT delivered the following dissenting opinion:

In this case the so-called citation upon which depends the jurisdiction of the County Court to divest the plaintiffs of their property was issued on June 6, 1902, and required the heirs at law of the decedent

"and all others unknown, and all persons interested in said estate, to appear before the county court of Coo.; County, Oregon, at the courthouse at Coquille City, in Coos County, Oregon, on the 14th day of July, 1902, and show cause," etc.

It is said that this citation was served by publication for four weeks.   Under any computation of that period, the service of the citation was not complete until some time after the first Monday in July of that year. Section 1254, L. O. L., which has stood in that form since the original enactment of 1862, declares:

"Upon the filing of the petition a citation shall issue to the devisees and heirs therein mentioned, and to

all others unknown, if any such there be, to appear at a term of court therein mentioned, not less than ten days after the service of such citation, to show cause, if any exist, why an .order of sale should not be made as in the petition prayed for.''

It is a plain requisite of a citation that the term at which the heirs must appear shall be mentioned therein. It is equally mandatory that there shall be a lapse of not less than ten days after the service is complete until the term occurs which is to be designated in that document. In the citation, however, no term of court is specified. The times of holding court are fixed by law and are. presumed to be known by everyone. It is the intent of the statute that citations are to be made returnable with reference to dates thus within general knowledge and nothing else can be made the standard. The heirs can be bound only by a notice framed in the terms of the statute. Anything less than or different from that is not sufficient to confer jurisdiction to deprive them of their property. The instrument in question does not measure up to the plain commands of the statute and they cannot rightly be frittered away by mere construction which is but little short of judicial legislation..

At the time the proceedings in question were had it was the law that:

''There shall be a term of the county court convene in each of the several counties of this state for the transaction of probate and all other civil business cognizable by county courts, except the transaction of county business, on the first Monday in each month'': B. & C. Comp., § 2522.

Section 936, L. O. L., defines the jurisdiction of the County Court in probate matters. Section 946, L. O. L., prescribes the order of business of the County

Court at each term, the second subdivision reading thus:

"2. The business pertaining to a court of probate as defined and specified in section 936."

Section 947, referring to the County Court, says:

"The court is always open for the transaction of the business mentioned in subdivision 2 of the last section whenever the particular proceeding or transaction is authorized to be had or done, without the presence of or notice to another."

This section manifestly refers only to *ex parte* transactions and cannot be held to include matters of the kind involved which depend for jurisdiction upon notice to the parties.

This is not a question of serving a valid process upon the defendants therein and taking a decree prior to the expiration of the period of service. It is a question of publishing that which is not process because it does not comply with the requirements of the statute defining the citation and prescribing what it shall contain. It will not do to say that because the return day might have happened before the adjournment of some term of the court the proceeding can be sustained on the ground that the County Court is always open. It was, indeed, always open within the meaning of law, but only for the transaction of business which may be done without notice. Where due process of law is required, however, as in cases of taking the property of heirs the citation must be constructed and made returnable with reference to a term of court to be mentioned therein which must be one occurring after the lapse of ten days subsequent to the completion of service. The paper relied upon is not a citation within the meaning of the law because of the failure to designate the proper or any term of court at which cause

was to be shown against the sale. The proceedings based thereon are void upon their face and hence may be attacked in this collateral litigation to quiet title. For these reasons I am unable to concur with the argument of Mr. Justice MOORE.

MR. JUSTICE BEAN delivered the following dissenting opinion:

The order of sale made by the County Court was made without jurisdiction and void. It should not be given any force.